117 So.2d 753 (1960)
In re ESTATE of Minerva J.G. YOST, Deceased.
VARIETY CHILDREN'S HOSPITAL, a Non-Profit Corporation under the Laws of Florida; and Crippled Children's Society, a Non-Profit Corporation under the Laws of Florida, Appellants,
v.
Eva Edmondston Grater MAGEE, As Administratrix C.T.A. of the Estate of Minerva J.G. Yost, Deceased, and Individually; George T. Clark, As Administrator Ad Litem; and Edith G. McCrea, Winston McCrea and Thompson McCrea, Appellees.
No. 59-107.
District Court of Appeal of Florida. Third District.
February 8, 1960.
*754 Brunstetter, Netter & Buchmann, and S. Grover Morrow, Miami, for appellants.
Hudson, McNutt, Campbell, Isom & Rearick, Grady C. Harris, and George T. Clark, Miami, for appellees.
CARROLL, CHAS., Judge.
This is an appeal from an order of the county judge's court in Dade County denying probate of a codicil. The original of a duly executed codicil could not be found, and the court rejected a proffered executed copy upon finding that the original had been in the possession and control of the testatrix, and, therefore, that there was a presumption she had destroyed and revoked the codicil, and that such presumption had not been dispelled.
The determinative question, as stated and argued by appellants, is whether there was competent evidence to support the trial court's finding that the testatrix had possession of the codicil. We hold that the court's finding in that respect was clearly wrong and not supported by any competent substantial evidence. In so concluding, we have noted and given due effect to the established rule that an appellate court should not disturb the findings of a county judge's court in a probate matter except upon finding an absence of substantial evidence to support the trial court's finding or that the legal effect of the evidence as a whole was misinterpreted by the trial court. In re Evers' Estate, 160 Fla. 225, 34 So.2d 561; In re Wider's Estate, Fla. 1952, 62 So.2d 422; In re Zimmerman's Estate, Fla. 1956, 84 So.2d 560.
This case was not decided on conflicting testimony. Only one witness testified concerning the making of the codicil and its subsequent handling or disposition prior to the time Minerva Yost died.
The material facts were not in dispute. A brief statement of certain of them seems essential. The testatrix made a will in 1948 in Florida. Later she visted Norristown, Pennsylvania, where she had lived previously, and left her will with her cousin Frank Kenneth Moore, a lawyer of that city. The will was sealed in an envelope, and she instructed him to keep it for her but not to examine its contents. The testatrix *755 had no spouse or lineal descendants. Her will contained bequests of $5,000 to each of her four nieces and nephews, with the residue left to her sister and one of the nieces. Her cousin, Moore, in whose care she left her will, did not know its contents other than that the beneficiaries were her relatives.
In 1955, when Mrs. Yost was about 90 years old, she journeyed from Florida to Pennsylvania for a short stay, and while there she had Moore prepare a codicil changing her will to provide that the residue of her estate should go to "Crippled Children's Hospital of Dade County Florida." The sister of the testatrix, whom she had named in her 1948 will as a residuary legatee had died, and the other residuary legatee, a niece, also had a specific bequest of $5,000. The lawyer, Moore, was reluctant to comply with the wish of the testatrix to change her will in that respect, and he delayed, and sought to dissuade her. She remained firm in her purpose, and the codicil was prepared and executed, and was left with Mr. Moore by the testatrix who instructed him to keep the codicil for her. The codicil went into his office safe, which also held the will. Although Moore testified it was his usual custom to retain and file in his safe only an executed copy of a will or codicil he prepared for a client, and for the client to take the original, his testimony, which the trial court found to be generally vague, was definite on the point that in this instance he had kept the original of Mrs. Yost's will in his safe at her request, and that she had left the original of her codicil with him with instructions to keep it for her.
The witnesses to the execution of the codicil were Moore, his wife and his secretary. The secretary was new in the office and remained in his employ only a few weeks. She married and moved away, and her whereabouts were not learned until she was located through effort of appellants a short time after the entry of the order appealed from.
Referring again to the time of the making of the codicil, the record shows that the testatrix returned to Florida several days thereafter. She had no further conversation with Moore regarding the codicil; she made no change in her instructions to him to keep it; there is no evidence that she returned to his office; he accompanied the testatrix to the train when she left; and she did not further discuss the codicil with him, nor he with her. She died a few months later. Moore produced the will, but not the codicil, and he did not disclose the fact that the codicil had been made until approximately a year after the will had been produced and filed for probate. At that late date he informed the attorney for the administratrix of the making of the codicil, and produced the executed copy, which he had "found" in his safe.
The original of the codicil being lost and unaccounted for, the question of the acceptability for probate of the executed copy of the codicil turned on whether the original codicil was entrusted to Moore and remained in his charge and custody, or whether the testatrix, after having left the codicil with Moore with express instructions to him to keep it for her with her will, had somehow come into possession of the codicil and retained it herself.
This is so because if the testatrix entrusted the codicil to her lawyer, and he retained it, his failure to find and produce it on her death would not give rise to any presumption of its revocation. See 57, Am.Jur., Wills, §§ 549, 568; 95 C.J.S. Wills § 385c; Annotation, 3 A.L.R. 2d 949, 957, 968. On the other hand, if the testatrix kept the codicil, or, after entrusting it to her lawyer, gained or regained possession herself, and it could not be found or produced following her death, it would be presumed, in the absence of other evidence, that she had destroyed and revoked the codicil. See Schaefer v. Voyle, 88 Fla. 170, 102 So. 7; Thomas v. Thompson, 114 Fla. 833, 155 So. 321, 323; Stewart *756 v. Johnson, 142 Fla. 425, 194 So. 869, 871; In re Evers' Estate, supra, 160 Fla. 225, 34 So.2d 561; In re Washington's Estate, Fla. 1952, 56 So.2d 545.
Those two propositions mark the principal divergent contentions of the parties. Appellants contend the evidence established that Moore was entrusted with the codicil, and that there is no substantial evidence that the testatrix later obtained it. Appellees contend, and the trial court so found, that a possibility that the testatrix could have returned to Moore's office and obtained the codicil from his safe without his knowledge, was sufficient to support a finding that she did so, and that it was she, and not Moore, who had possession of the codicil.
There is no need, as we see it, to concern ourselves with the problem of the claimed presumption that the testatrix revoked the codicil. That presumption would come into effect only if the evidence should establish that the testatrix had and retained possession of the codicil. It is not without reluctance that we must hold the learned trial judge in error in this respect, but the record simply will not support a finding that the testatrix had possession of the codicil. Such a finding could be reached only at the top of a pyramid of inferences. It would be necessary to infer that the testatrix, after deciding to leave her codicil with her will in care of her attorney changed her mind, but chose not to tell him of that decision; that she went to his office at a time when Moore was not there, during the few days before she returned to Florida; that she was able to prevail upon his secretary to go into his safe, in Moore's absence, remove the codicil and give it over to the testatrix, without taking any receipt or noting the transaction, and without reporting it to her employer; and that when Moore took the testatrix to the train and saw her off to Florida, if she had obtained the codicil from his office in his absence, that she would not have mentioned it to him.
In Commercial Credit Corporation v. Varn, Fla.App. 1959, 108 So.2d 638, 640, in an opinion by Justice Thornal sitting as an associate judge of the First District Court of Appeal, it was said:
"* * * The rule is clear, however, that the inference of the existence of an essential fact to be drawn from circumstantial evidence cannot be made the basis of a further inference of an essential fact, unless it can be said that the initial inference was established to the exclusion of any other reasonable inference.
"Ordinarily, the rule with reference to inferences based on circumstantial evidence is different in civil actions from the rule which applies in criminal matters. In civil cases if the proved circumstances justify an inference pointing to an essential fact which inference outweighs all reasonable inferences to the contrary, it can then be said that a conclusion as to the existence of the ultimate facts is justified by the circumstantial evidence. Tucker Brothers, Inc. v. Menard, supra [Fla. 1956, 90 So.2d 908]. However, the established rule of evidence is that we cannot construct a conclusion upon an inference which has been superimposed upon an initial inference supported by circumstantial evidence unless the initial inference can be elevated to the dignity of an established fact because of the presence of no reasonable inference to the contrary. Voelker v. Combined Ins. Co. of America, Fla. 1954, 73 So.2d 403. See also Wigmore on Evidence, Vol. 1, Sec. 41."
The circumstances in the instant case, or the circumstantial evidence, would not reasonably give rise to the inferences referred to above, but rather to contrary inferences, and, therefore, we hold that the court's conclusion that Minerva Yost came into possession of her codicil prior to her death after having delivered it for safekeeping to her lawyer, was a finding superimposed *757 on inferences not supported by the circumstances and evidence in the case.
The material evidence was that given by Moore, of which the following excerpts are revealing:
"Q. Did Mrs. Yost remain at your office while the codicil was prepared? A. Yes; it didn't take the girl long to prepare it.
"Q. After it was prepared, what happened? A. She signed them both, and then the original copy never got out of my office except,  I mean, it was never returned to her; I had both the original and the copy in my possession. And I found the one in the back of my old safe. The cover was the same buff color as the paint, and it got back in there some way, and it must have been back there some time, because I didn't know it was there. My eyes are not as good as they used to be; you have to reach in where it was dark; that is where this copy was found. I had a small fire, oil-burner fire, at the office. I had small improvements made at the office; and I had this young substitute girl; and I don't want to blame it on anybody; I will take as much blame as anybody. The original disappeared; and it was never returned to Mrs. Yost; she never had it in her possession,  the original.
"Q. It never left your office? A. No. May I say this,  I think it is proper to say it; if she hadn't forbidden me to touch the will, I would have just have put it in with the will. I didn't have a large enough envelope. She says, `I want you to keep that will, not open that will until I die.' What could I do? I have always followed her advice, tried to get along with her; because she was very firm.
* * * * * *
"A. Mr. Clark, if you can tell me or other people,  sometimes, why things get mislaid; you would be sitting on the right hand of God, the Father almighty. I don't know why it got mislaid, but it got away. I have mislaid things before, and I guess all of us do on occasion. If I knew, I would tell you. But at no time was it ever delivered to Mrs. Yost.
* * * * * *
"Q. At the time that you came to Florida with the original will,  A. No, I didn't have that.
"Q. You knew there was a codicil? A. Yes, I know. I looked for it, but we came down here on a matter of short notice; and in the meantime the girl had left; and then we got the present girl, who is an experienced girl; Winnie, my secretary.
"Q. You knew there was a codicil? A. Yes, but I didn't know where it was; I was afraid it had gone, and I didn't know where it was.
"Q. Did you say anything to Mrs. Magee about it? A. I don't remember.
"Q. Did you say anything to Mr. Harris about it? A. I don't remember whether I did not or not; I don't think I did, I don't remember. I didn't have it, and I didn't want to talk about something  I thought perhaps it was gone.
* * * * * *
"Q. You knew this codicil that you prepared, was changing the residue estate? A. Yes.
"Q. And you knew who was going to get the residual estate, before you drew the codicil? A. She told me.
* * * * * *
"Q. It was your feeling at the time you made the codicil that you did not desire the codicil to be made, or to be executed by Mrs. Yost, for the reason that you wanted the property to go to members of the family, as you understood it went in accordance with the *758 will that it was changing; is that correct? A. That is correct.
* * * * * *
"Q. You have searched your safe completely for it [the codicil], up on the drawers, and in the back where the buff color is, and you are not able to find it? A. No.
"Q. Have you searched the office and the file? A. Yes.
"Q. The original was kept in your office by you? A. Mrs. Yost had never received it.
"Q. Was it kept by you in your office? A. Yes, sir.
"Q. You can't find it anywhere in your office, though you have searched fully for it? A. That's right.
"Q. (By Mr. McNutt) You mean to say you never delivered it to Mrs. Yost? A. That's right.
"Q. You can't say your secretary never delivered it? A. No, she never does anything like that.
"Q. But you don't know whether she did or not? A. If she did it would have seemed 
"Q. Is it a fact that if Mrs. Yost came in while you were out of the office and asked for it, your secretary might have delivered it? A. Just a few days after this was signed she came back to Miami; I took her to the train, put her on and got her ticket; and shortly, I can't tell you how many days, but shortly afterwards  I thought she was going to stay up there; we couldn't tell; I didn't know.
"Q. But there were a few days intervening in which she could have come back to your office and picked up the original; is that right? A. She could have."
The foregoing testimony did not constitute substantial evidence that Mrs. Yost went back to Moore's office and obtained her codicil from his safe. Moreover, circumstantial evidence in this case could not support the tandem inferences necessary to be indulged in order to reach that ultimate fact, because of the deterring effect of more reasonable inferences to the contrary. Commercial Credit Corporation v. Varn, supra.
Having decided this appeal on the question of the sufficiency of the evidence, there is no need to deal with a second question which was raised and argued by appellants.
For the reason stated, the order appealed from is reversed, and the cause remanded for further proceedings not inconsistent herewith.
Reversed.
HORTON, C.J., and PEARSON, J., concur.