JAMES SELLERS v. FRANCIS BRIDGES, JAMES VOCELLE and
JOSEPH Y. CHENEY, as and constituting the Florida Parole Com-
mission, and L. F. CHAPMAN, Superintendent of Florida State
Prison.

15 So. (2nd) 293                               June Term, 1943
October 15, 1943                                  Division B

*Philip D. Beall,* for Petitioner.

*J. Tom Watson,* Attorney General, *John C. Wynn* and *Millard Conklin,* Assistant Attorneys General, for respondents.

SEBRING, J.:

The petitioner, James Sellers, was informed against for an alleged criminal violation of the beverage laws of this state; the charge being that he "did remove and conceal and was concerned in the removing and concealing of one gallon more or less of moonshine whiskey, for and on which a tax was and is imposed by the Beverage Act of the State of Florida, with intent to defraud the State of Florida of such tax." Upon arraignment the petitioner entered a plea of guilty to the offense charged, and was sentenced to serve a term of three years at hard labor in the State Prison. After serving approximately one year of sentence in actual confinement, the petitioner was paroled by the Florida Parole Commission, subject to certain specific conditions of parole, until January 1, 1946, "unless otherwise released, or until other action may be taken by the Florida Parole Commission."

While out of confinement on parole petitioner instituted this habeas corpus proceeding to secure an absolute discharge from penal supervision, grounding his plaint on the proposition that as the information under which he was charged did not state an offense against law, his detention and restraint were illegal.

This Court has heretofore held that moonshine whiskey is not a liquor for and in respect whereof a tax is imposed by the Beverage Act of Florida. See Brown v. State, 152 Fla. 852, 13 So. (2nd) 458. The information to which petitioner entered his plea of guilty failed, therefore, to charge any offense against the laws of Florida. A judgment founded upon such void charge is without legal foundation, and is insufficient upon which to base a valid commitment for imprisonment. Brown v. State, supra.

It may be questioned whether habeas corpus is available to the petitioner to test this matter; it being conceded that at the time of his application for the writ he was not suffering

actual physical incarceration, but was at large as a parolee upon certain terms and conditions imposed by the Florida Parole Commission and agreed to by him.

Under this circumstance, will habeas corpus lie? We think so.

The parolee, although at large while on parole, is a prisoner no less than a prisoner physically confined. He is enduring compulsory expiation of an offense. He is under daily personal restraint. He is at all times answerable to prison system officials for his conduct. Such officials have authority to greatly circumscribe his freedom of choice and action. Being amenable to prison system rules and authority and under immediate restraints is he not, to all practical purposes, in custody? See Carpenter v. Lord, 88 Or. 128, 171 p. 577, 579, L.R.A. 1918D 674, 677.

Parole is that procedure by which a prisoner who must in any event be returned to society at some time in the future is allowed to serve the last portion of his sentence outside prison walls and under strict supervision, as preparation for his eventual return to society.

No prisoner is placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. An investigation by the Parole Commission must disclose that there is a reasonable probability that the applicant for parole will live and conduct himself as a respectable and law abiding person, and that his release will be compatible with his own welfare and the welfare of society, before parole may be granted. Sec. 947.18 Florida Statutes, 1941.

A prisoner must serve at least six months of his term and have a good prison record, before he is eligible for parole. Sec. 947.16 Florida Statutes, 1941. In every case the parole period must run for at least as long as the remainder of the sentence originally imposed, unless the parolee is sooner released by the pardoning authority. Sec. 947.24 Florida Statutes, 1941. The Commission, upon placing a person on parole, Sec. 947.19 Florida Statutes, 1941. A violation of the terms of parole may render the parolee liable to arrest and return to prison to serve out the remainder of the term

for which he was sentenced; and no part of the time he may have been on parole shall, in such event, in any manner diminish the time of such sentence.   Sec. 947.21 Florida Statutes, 1941.

Parole, therefore, is not an act of amnesty or forgiveness —as some suppose.   It does not put an end to sentence legally imposed.   Rather, it is a continuation of sentence.   The parole plan proceeds, in theory at least, upon the salutary principle that as the prison sentence of the individual must eventually terminate, the ends of society as a whole, as well as of the individual prisoner, will be better served by providing the prisoner a transition period for adjustment from the completely artificial life in a penal institution under continuous physical restraint and free from economic and social pressures to the untrammeled life of a free individual in a highly competitive society.   The Florida Parole Commission is given statutory authority to determine the terms and conditions under which the prisoner may secure parole.   Once secured, and upon the terms and conditions imposed by the Commission, prisoners became parolees (trusties outside prison walls, as it were) but prisoners amenable to discipline, direction, and supervision of prison system officials none the less.

Experience has demonstrated the worth of an effective system of parole as being essential to any effectual penal system.   But it cannot be doubted that the prisoner on parole is certainly subject to some personal restraints of liberty not ordinarily imposed on free citizens.   For example, the petitioner in the present case has agreed, as a conditiion of parole: that he will report immediately upon his arrival at his destination, to the parole supervisor under which supervision he is paroled; that he will not change his residence or employment, or leave the county of his residence, without first procuring the consent of the Florida Parole Commission; that he will report to his parole supervisor monthly; that he will in all respects conduct himself honorably, work diligently at a lawful occupation, support his dependents to the best of his ability, and live within his income.   He has agreed not to use intoxicants to excess; not to frequent gambling places

or juke joints; not to carry weapons with him, without consent. He has agreed to avoid injurious habits and persons of harmful character or bad reputation; to take regular treatments until cured, if he should become infected with a venereal disease. He has agreed that he will live and remain at liberty without violating the law; that he will waive all extradition rights and process during the parole period; that he will allow the supervisor to visit him at his home; and that he will carry out all instructions that his parole supervisor may give. Furthermore, it is a condition of his parole that he will not marry without the consent of the Parole Commission.

Can there be any doubt but that the terms and conditions imposed by the Parole Commission operate to greatly restrict the fundamental liberties and privileges of the individual? To be sure, these terms and conditions are, in effect, self imposed by the prisoner. He has agreed to adhere to and abide by them as a condition of parole. But he has done so in consideration of the grant to him of the larger and more precious privilege of coming out of prison, even though thereafter under surveillance and direction of the Parole Commission until absolute discharge. And to the extent that he has relinquished such liberties, to that extent he has circumscribed his freedom of choice and action—of going when and where he pleases.

Now, the imposition of such moral and physical restraints are generally recognized as proper conditions of parole, and as being conducive to the prevention of a recurrence of criminal activity by the individual. Being agreed to by the prisoner as a condition of parole, he will ordinarily be held bound to a compliance therewith, and may be reincarcerated for their breach. See Ex Parte Alvarez, 50 Fla. 24, 39 So. 481, 111 Am. St. Rep. 102; State ex rel. Brown v. Mayo, 126 Fla. 811, 171 So. 822.

But the agreement to be so bound, as a precedent condition for parole must necessarily presuppose a valid imprisonment in the first instance to support the agreement. Such agreement may not be upheld if based upon a void charge or void judgment. It has long been recognized that habeas

corpus will lie to test the validity of an arrest and actual physical detention for an alleged violation or noncompliance with the terms of a conditional pardon. Ex Parte Alvarez, supra. Why, then, should it not lie at the behest of a parolee who, although not physically restrained, is nevertheless under the restraint of freedom of action and choice and decision upon him as a result of a judgment and sentence entered upon an information which wholly fails to charge an offense under the law?

The petitioner is discharged.

It is so ordered.

BUFORD, C. J., BROWN and THOMAS, JJ., concur.