172 So.2d 628 (1965)
Michael Leroy KOPTYRA, Appellant,
v.
STATE of Florida, Appellee.
No. 4965.
District Court of Appeal of Florida. Second District.
February 26, 1965.
Rehearing Denied March 25, 1965.
*629 William T. Swigert, of Greene, Ayres, Swigert & Cluster, Ocala, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
SMITH, Chief Judge.
The defendant seeks reversal of his conviction for unlawfully possessing and having in his control a certain narcotic drug, cannabis, commonly known as marijuana. He contends that the trial court erred in refusing to suppress and in admitting into evidence over his objection certain evidence allegedly obtained as the result of an unreasonable search and seizure. He further contends that the trial judge erred in holding that the evidence as a whole *630 was legally insufficient to warrant giving an instruction to the jury on the defense of entrapment.
The record discloses that the search and seizure complained of occurred under the following circumstances. In the course of his official duties an Inspector with the Florida State Bureau of Narcotics successfully cultivated the friendship of the defendant, Theodore Salute and Pamela Hardin, an eighteen year old girl. At about 12:30 A.M. on May 16, 1961, the inspector proceeded to the vicinity of the Hardin residence in the company of Deputy Sheriffs Vincent and Meeks, another officer of the State Narcotics Bureau and Detective Holloway of the Tampa Police Department. The inspector alone approached the Hardin house, was admitted by Salute, and proceeded into the living room where the defendant and Miss Hardin were seated. The defendant, Salute and Miss Hardin appeared to be lethargic. In the inspector's words, "They were sitting there, not moving, not talking, but just staring." He noticed heavy smoke having a strong odor of marijuana. Salute produced a marijuana cigarette, lit it, and passed it around, among others, to the defendant and to the inspector, who simulated smoking it. The inspector saw Salute take an envelope containing marijuana from a bread box in the kitchen and roll a cigarette with it. This was one of three cigarettes which were handed, among others, to the defendant and smoked in the inspector's presence. He retained the butt of one of these cigarettes.
After about an hour the inspector temporarily excused himself, met the other enforcement officers nearby, showed them the marijuana cigarette butt and returned with them to arrest the defendant and his companions. The inspector was admitted by Salute, who still had no knowledge of the inspector's official status or purpose. Salute did not notice the other enforcement officers until they followed the inspector through the open door. After the officers arrested the defendant and his companions they searched the premises. Meeks found a rolled paper containing five cigarettes on the floor near the seat which the defendant had occupied. The material which Salute had taken from the bread box in the inspector's presence was found by Holloway in a paper bag under the steps leading to the entrance to the Hardin home. Analysis confirmed the presence of marijuana in these two items and in the cigarette butt retained by the inspector.
The exact sequence of all of the events pertaining to the entry, the arrest, and the search is not entirely clear. However, the record indicates that Salute voluntarily admitted the inspector without knowing his official status or purpose; that the other enforcement officers followed the inspector through the open door; that one of the officers other than the inspector arrested the defendant; and that Meeks and Holloway initially located the two items of evidence found in the search following the arrests. It does not appear that any of the officers announced their purpose before entering; at least the State failed to clearly show that any of them did so.
Section 22 of the Declaration of Rights in the Constitution of the State of Florida, F.S.A., expressly provides that the right of persons to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated. In Florida a peace officer may arrest a person without a warrant, among others, under the following circumstances: (1) when the person to be arrested has committed a felony in his presence, (2) when a felony has in fact been committed and he has reasonable ground to believe that the person to be arrested has committed it; (3) when he has reasonable ground to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it. Section 901.15, Fla. Stats., F.S.A. Unlawful possession of cannabis is a felony. Sections 398.02, 398.03, 398.22, Fla.Stats., F.S.A. When authorized to make an arrest for a felony without a *631 warrant, an officer may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose. Section 901.19, Fla.Stats., F.S.A.
Here, as in Benefield v. State,[1] the arresting officer had probable cause for believing that the defendant had committed or was committing a felony, but he did not announce his authority and purpose before entering the premises to make the arrest. The appellant contends that the method of entry into the Hardin dwelling constituted a "constructive breaking" in violation of Section 901.19, Fla.Stats., F.S.A., and that this rendered the arrest and subsequent search illegal under the rule of the Benefield case. In Benefield there was some testimony that the individual who had passed marked money to the defendant held the door open for the arresting officer. However, the Supreme Court based its decision on that individual's testimony to the contrary and decided that there was a breaking because the arresting officer entered by opening an unlocked screen-door. In the present case the record discloses that the inspector was first voluntarily admitted by Salute and that the arresting officer then followed him through an open door.
The requirement of prior notice of authority and purpose before forcing entry into a home is discussed in Miller v. United States,[2] which, like Benefield, involved an actual breaking without prior notice of authority or purpose by an officer who had authority to arrest without a warrant. As noted in that case, the requirement is deeply rooted in our heritage and should not be given grudging application; further, compliance is also a safeguard for the police themselves, who might otherwise be mistaken for prowlers and shot down by a fearful householder.
Ker v. State of California,[3] also involved what amounted to an actual breaking without compliance with the demand and explanation requirements of a California statute. The California courts sustained the arrest on the basis of a judicial exception which had been engrafted on the statute. Under this exception compliance was not required where the officer's peril would have been increased or the arrest frustrated by destruction of evidence if he had demanded entrance and stated his purpose. Four justices found this exception to be reasonable under the Fourth Amendment in the particular circumstances of the case, which they summarized as follows: "In addition to the officers' belief that Ker was in possession of narcotics, which could be quickly and easily destroyed, Ker's furtive conduct in eluding them shortly before the arrest was ground for the belief that he might well have been expecting the police." Four members of the Court dissented on the ground that the Fourth Amendment is violated by any unannounced police intrusion except (1) where those within already know the officer's authority and purpose, (2) where officers are justified in believing persons within are in imminent peril of bodily harm, or (3) where those within are then engaged in activity justifying the belief that an escape or destruction of evidence is being attempted. Affirmance of the conviction resulted from the fact that Justice Harlan concurred in the result for other reasons.
The method of entry here did not involve a breaking within the meaning of Section 901.19, Fla.Stats., F.S.A., as construed in Benefield. By concealing his identity and purpose the inspector gained peaceable entry. As he was arresting Salute, the assisting officers entered through the open door and arrested the defendant and Pamela Hardin. There was no forcible entry. The entry was gained *632 peaceably by ruse. Similar methods of entry have been upheld.[4] The entry was not under color of office as in Collins v. State.[5] The defendant does not contend and it does not appear that the search exceeded the recognized bounds of one incidental to an arrest. Consequently, the evidence complained of was properly admitted.
Within the scope of a defendant's plea of not guilty he may interpose the defense of entrapment where he is charged with possession of narcotics.[6] Where there is evidence tending to prove the defense of entrapment the defendant has the right to have the jury instructed concerning the rules of law applicable to the defense. We must therefore state the essential elements of entrapment and determine whether or not there is evidence tending to prove the defense.
One who is instigated, induced or lured by an officer of the law into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of entrapment. Such defense is not available, however, where the officer or other person acted in good faith for the purpose of discovering or detecting a crime and merely furnished the opportunity for the commission thereof by one who had the requisite criminal intent. Lashley v. State.[7]
In determining whether or not there is evidence tending to prove entrapment, the distinction to be observed on the facts in this case is whether there was evidence tending to show that the inspector enticed the defendant to possess the marijuana in question when the defendant would not have possessed it without such enticement, thus showing the requisite elements, or whether the defendant, while engaged in the unlawful enterprise of possession of marijuana, was merely enticed to possess it in the presence of the inspector so that his possession could be proven by direct evidence. The distinction is that on the one hand decoys are not permissible to ensnare the innocent and law abiding into the commission of a crime, but decoys may be used to entrap criminals and to present opportunity to one intending or willing to commit the crime. In determining whether or not the evidence was sufficient to require the giving of an instruction to the jury on the defense of entrapment, it must be borne in mind that the defense of entrapment is in the nature of an avoidance of the charge. While the state always has the burden of proving the guilt of accused beyond a reasonable doubt and the accused never has the burden of proving his innocence, nevertheless, the burden of adducing evidence on the defense of entrapment is on the accused unless the facts relied on otherwise appear in evidence to such an extent as to raise in the minds of the jury a reasonable doubt of guilt. 22A C.J.S. Criminal Law § 573.
We now advert to the evidence on this specific question, given primarily on cross-examination of the state's witnesses, the inspector, Salute and Miss Hardin. The inspector had no knowledge that the defendant had been previously convicted of a crime. He intentionally cultivated his friendship of the defendant, Salute and Miss Hardin in connection with his official duties; his associations with them extended over a period of approximately four months. They did not know that he was *633 an officer of the law. Marijuana was a topic of conversation among them and on several occasions he asked them to obtain some marijuana. He made trips with them on prior occasions to obtain marijuana but they were unsuccessful. The inspector had not previously seen them with marijuana; he did not specifically request them to obtain the marijuana received in evidence. He did not go with them when they obtained it. He did not furnish the money to make the purchase. The defendant and his companions were using the marijuana before the inspector arrived. The record is silent as to how the inspector learned or suspected they were going to possess marijuana on the night in question.
The defendant cites and relies chiefly upon Morales v. U.S., 6 Cir.1958, 260 F.2d 939, which involved somewhat similar facts. That case is distinguishable chiefly because there the defendant testified that he had never considered dealing in marijuana before he met the undercover agent and that he did not think he would have sold marijuana if he had not met the agent. In the present case there is no testimony along that line. We have also studied the cases involving the defense of entrapment in prosecutions for violation of narcotics laws that are collected and summarized in an annotation in 33 A.L.R.2d 883 (1954) and we find no cases there involving the sufficiency of evidence to require submission of the defense to the jury under appropriate instructions on facts similar to those of the case at bar.
In our opinion the evidence in the present case was insufficient to raise the issue of entrapment. The fact that the inspector previously had attempted to induce the appellant to obtain marijuana was irrelevant in the absence of evidence connecting his prior unsuccessful attempts with the offense in question. United States v. Sherman, 2 Cir.1952, 200 F.2d 880. The remaining evidence establishes nothing more than the fact that the inspector passively permitted the appellant to possess marijuana in his presence for the purpose of obtaining direct evidence. Considered as a whole the evidence was insufficient to raise the issue of entrapment and the court properly refused to instruct the jury on that defense. Turner v. State, Fla. 1954, 74 So.2d 891.
Affirmed.
ANDREWS and KANNER, (Ret.), JJ., concur.
NOTES
[1] Fla. 1964, 160 So.2d 706.
[2] 1958, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332.
[3] 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726.
[4] See Adams v. State, Fla.App. 1962, 143 So.2d 903; Leahy v. United States, 9 Cir.1959, 272 F.2d 487 (cert. dismissed, 364 U.S. 945, 81 S.Ct. 465, 5 L.Ed.2d 459); Dickey v. United States, 9 Cir.1964, 332 F.2d 773; Jones v. United States, 1962, 113 U.S.App.D.C. 14, 304 F.2d 381 (cert. den., 371 U.S. 852, 83 S.Ct. 73, 9 L.Ed.2d 88).
[5] Fla.App. 1962, 143 So.2d 700.
[6] By statute the defense of entrapment is abolished in certain prosecutions. See 6 F.L.P., Criminal Law, § 59.
[7] Fla. 1953, 67 So.2d 648.