185 So.2d 745 (1966)
David Joseph THOMAS, Appellant,
v.
The STATE of Florida, Appellee.
No. 65-698.
District Court of Appeal of Florida. Third District.
May 3, 1966.
*746 Joe Brown Booth, Miami, for appellant.
Earl Faircloth, Atty. Gen., and James T. Carlisle, Asst. Atty. Gen., for appellee.
Before HENDRY, C.J., and PEARSON and CARROLL, JJ.
PER CURIAM.
This is an appeal by the defendant, David Joseph Thomas, from a judgment and sentence following a jury trial and conviction on five counts of an information for beverage law violations. The defendant was sentenced to eighteen (18) months in the state penitentiary on each of the following counts: possession of still and equipment; possession of raw material for use in manufacture of moonshine whiskey; possession of moonshine whiskey; possession of containers for use in bottling moonshine whiskey; and, unlawfully concealing beverage with intent to defraud state of taxes, the sentences to run concurrently.
The defendant contends that the trial court erred in denying his motion for a directed verdict on the ground that the defense of entrapment was established as a matter of law. We find merit in this contention and reverse.
The defendant entered a plea of not guilty to the charges made in the information. However, at trial, counsel for the defendant in his opening statement admitted that the defendant was guilty of the charges but interposed the defense of entrapment.
A review of the record reveals that Thomas and one Isham Pope were arrested on August 12, 1964 and charged with violations of the state beverage laws similar to the charges in the case before us. Thomas testified that approximately three or four days after he was released from jail on bond Thomas Ilic, the state beverage agent who had arrested Thomas and Pope, came to his house and wanted to know who was backing Pope. Thomas told the agent that he did not know and Ilic asked Thomas to let him know if he found out. Ilic testified that the above meeting might have occurred but he could not remember. On November 9, 1964 Thomas went to Ilic's office and indicated that Pope had contacted him with a proposition that they again enter the moonshine business. Thomas stated he wanted to work for the State Beverage Department in an undercover capacity. The agent told Thomas he could do anything he wanted to as to being an undercover agent, but he was not to engage in the moonshine business, and there was no deal promised Thomas. Thomas was told to report his findings on a weekly basis. On November 29, 1964, Thomas was stopped by a City of Miami policeman for a traffic violation. At the time of the arrest Thomas, who was accompanied by Pope, was transporting sugar and raw materials generally used in the manufacture of moonshine. The policeman testified that Thomas immediately got out of the car and told him he was an agent for the beverage department. Thomas gave the policeman the phone number to call to verify this. The policeman called his station to request an agent to come to the scene of the arrest. When Ilic and another agent, Kenneth A. Ball arrived, they told the policeman that Thomas was their agent, that he was working for them and was under their jurisdiction. Thomas told the agents that he and Pope were going to a still in the woods (which was operating with the knowledge of the agents) and suggested that after releasing them the agents should follow his car for a while in order to keep Pope from becoming suspicious. Ilic testified that he again told Thomas not to actively engage in the moonshine business, but to act only as *747 an observer. Thomas testified that he subsequently informed Ball that following the arrest Pope was afraid to return to the still. Thomas then stated that he was told to do whatever he had to do to hang on to Pope. Ball testified that he told Thomas to stick with Pope and see where he finally decided to locate. Ball also testified that Thomas informed him that he had still equipment at his house which belonged to Pope.
Ilic testified that in the course of other investigations he learned that Thomas was engaged in transporting moonshine. Thus, he instituted a surveillance at Thomas' house on December 31, 1964 and detected a distinct odor of fermenting mash. On the afternoon of January 4, 1965 Thomas went to Ball's office and requested thirty days free rein to operate the way he had to if he were to be of any use to the department. Ball told Thomas that he could not have a free rein, that he could do whatever he had to do, but only when he told the department in advance of what was going to occur. On the evening of January 4, the agents armed with a search warrant entered Thomas' house and arrested him on the current charges.
It is the general rule that the
"[D]efense of entrapment is available to those who are instigated, induced or lured by an officer of the law or other person to commit a crime which they had otherwise no intention of committing and, conversely, not available to those with the requisite criminal intent who are merely furnished with the opportunity to commit crime by an officer of the law or other person acting in good faith with the purpose of detecting and preventing crime."[1]
The rule springs from decency, good faith, fairness and justice.[2] It is thus necessary to consider the conduct of the state agents as well as considering the predisposition of the defendant. In the concurring opinion in Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848, Mr. Justice Frankfurter with whom Justice Douglas, Harlan and Brennan concurred observed that:
"The courts refuse to convict an entrapped defendant, not because his conduct falls outside the proscription of the statute, but because, even if the guilt be admitted, the methods employed on behalf of the Government to bring about conviction can not be countenanced. * * * Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law, is the transcending value at stake."
The undisputed evidence indicates that Thomas who was out of jail on bail following an arrest for moonshine activity but who had no prior record of such activity, was approached by a state agent to determine if he knew the source of Pope's money. Upon Thomas' request, he was told he could do anything he wanted to as to being an undercover agent, but not to engage in the moonshine business; yet the agents were informed by Thomas at this initial meeting that he and Pope were going to operate a still in the woods, and subsequently that still equipment belonging to Pope was at Thomas' house. Further, the agents were called to the scene of a traffic arrest where Thomas was discovered transporting moonshine equipment. When they arrived, the agents claimed Thomas as their undercover agent and he was allowed to leave without being charged for any offense. This is a classic example of actions speaking louder than words. Thomas is induced by the state agents to remain in contact with Pope for the purpose of uncovering one at a high level in the operations  the person supplying money to Pope. The agents tell Thomas not to engage in moonshine activities; yet it is evident that if an undercover agent is to be effective in *748 such an operation he must be a participant not merely an observer.
The only conclusion which can be reached from the evidence is that the conduct of Thomas was a product of the creative activities of the state agents and that Thomas' intention, whatever his motivation, was to assist the agents. Therefore, entrapment was established as a matter of law.
Accordingly the judgment appealed is reversed.
Reversed.
NOTES
[1] Dupuy v. State, Fla.App. 1962, 141 So.2d 825, 826.
[2] Peters v. Brown, Fla. 1951, 55 So.2d 334.