UNITED STATES of America

v.

Junior CUNNINGHAM.

No. 72 (Magistrate's Docket).
Case No. 17.

United States District Court,
M. D. Florida,
Jacksonville Division.

Sept. 1, 1972.

John L. Briggs, U. S. Atty., Robert F. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff.

Merritt H. Powell, Daytona Beach, Fla., for defendant.

## JUDGMENT

WILLIAM A. McRAE, Jr., Chief Judge.

Edward L. (Junior) Cunningham was convicted in a trial before a magistrate

of the United States of killing and possessing a deer in violation of 36 C.F.R. § 261.8 (1963), a regulation promulgated by the Secretary of Agriculture pursuant to 16 U.S.C. § 551, which makes unlawful the killing or having in possession, on land belonging to the United States and within a national forest, "any kind of wild animal . . . in violation of the laws of the state in which such land is situated." 36 C.F.R. § 261.-8(a) (1963). It is conceded that Mr. Cunningham killed and had in possession a deer in circumstances that would constitute a violation of Fla.Stat. § 372.99, ·F.S.A., unless, as was urged at trial and now serves as the basis of this appeal, Mr. Cunningham was entrapped.

■ Since this is a question of fact, United States v. Stocker, 273 F.2d 754 (7th Cir. 1960) ; State v. Rouse, 239 So.2d 79, 80 (Fla.4th DCA 1970) (entrapment ordinarily jury question), the inquiry of a reviewing court is limited to whether the factual determination below was clearly erroneous. *See* Rule 8(d), Rules of Procedure for the Trial of Minor Offenses before United States Magistrates.

The record on appeal consists of sound recordings of the proceedings below and a written summary styled "Report of the Magistrate to the Chief Judge." The Court is fortunate in having this report in view of the unsatisfactory quality of the sound recordings.

■ Briefly stated, the facts developed at trial are as follows: Mr. Cunningham was approached by a long time acquaintance accompanied by two government agents. They proposed an illegal hunting expedition. One of the agents said he wanted to make a present of a slain deer to his wife. The acquaintance fallaciously informed Mr. Cunningham that he had known the agents for four years and that he need fear no treachery. With this assurance, the party set out, although Mr. Cunningham had balked initially. Mr. Cunningham felled a deer which he gave to the agent, who offered payment which was magnanimously refused.

Florida law must be looked to for the rule of decision on substantive questions in the present case. 36 C.F.R. § 261.-8(a) (1963). The substantive question in the present case is whether the defendant was merely offered an opportunity to commit an offense or whether he was induced to commit it by law enforcement officers. *See* Annot. 75 A.L.R.2d 709 (1961).

■ The decision in Pearson v. State, 221 So.2d 760 (Fla.2d DCA 1969), stands for the proposition that the defense of entrapment is not available to a defendant who takes the stand to deny commission of the acts charged. In the present case, the defendant admitted the acts charged.

■ In Koptyra v. State, 172 So.2d 628 (Fla.2d DCA 1965), the general rule was enunciated, as follows: "One who is instigated, induced or lured by an officer of the law into the commission of a crime which he had otherwise no intention of committing may avail himself of the defense of entrapment." At 632. *Koptyra* was a prosecution for marijuana possession in which the Court held failure to instruct on the defense of entrapment had not been error. Among the reasons assigned for its decision, the Court enumerated: 1) "The inspector . . . did not specifically request [the defendant and his companions] to obtain the marijuana," at 633, 2) "He did not go with them when they obtained it," *Id.* 3) "He did not furnish the money . . ." *Id.* In the present case, the agents 1) made a specific request 2) went along and assisted in its effectuation 3) offered to furnish money.

In Thomas v. State, 185 So.2d 745 (Fla.3d DCA 1966), the Court reversed convictions for moonshine activities on the ground "that the conduct of Thomas was a product of the creative activities of the state agents and that Thomas' intention, whatever his motivation, was to assist the agents." At 748. The same might fairly be said of the defendant in the present case, although Thomas pur-

ported to be working as an undercover agent himself when he was arrested.

The Court below put much emphasis on the fact, admitted by the defendant, that he had in the past killed deer illegally when he was without food to eat. Language in Thomas v. State, 243 So.2d 200 (Fla.2d DCA 1971) (conviction reversed for failure to grant continuance necessary to present testimony relevant to entrapment defense), suggests that this fact is relevant: "[The] question . . . [is] whether the dealing in narcotics was instigated or induced by an officer of the law or his agent for purpose of prosecution *without previous intention to violate the law on the part of one so induced* . . ." At 202 (emphasis supplied.) The previous intention to which the Court refers, however, must surely be the intention to commit the crime with which the defendant is charged. The commission of past crimes of the same kind, is, of course, highly relevant on the question of whether the intention to commit yet another crime has been formed independently of official suasion, but the intention, whether consummated or not, to commit past crimes should be distinguished from the intention necessary to negative the defense of entrapment. "To accept [the contrary] contention would be to destroy the concept of entrapment." Dupuy v. State, 141 So.2d 825, 827 (Fla.3d DCA 1962). If a man who makes his livelihood from the sale of moonshine whiskey is cajoled by a public officer or his agent, into selling the last bottle of a batch—the one he had meant for himself—he has been entrapped no less than the man who, finding himself in possession of a jug of illicit spirits for the first time in life, is likewise induced to sell it. Otherwise, setting up the defense of entrapment would broaden the scope of a prosecution in an impermissible manner. It would be to make the law: "Rogues may be entrapped," and would necessitate proof that a man was a rogue. But this is not the method of the law; it is not due process of law. What is always required

is the proscription in advance of *acts*, not character.

In the present case, the defendant did indeed commit proscribed acts. But why did this deer die? (Not: Is this defendant a deerslayer?) Is it not because persons acting under public authority devised an elaborate ruse in order to inveigle a citizen into committing a crime for which he might be prosecuted? Ought the courts to encourage the killing of deer for this purpose by permitting a conviction of this kind to stand?

The Court concludes that the facts developed at trial establish that the requisite criminal intent originated, not with the defendant, but with agents of the government.

The judgment below is, accordingly, reversed.