322 So.2d 36 (1975)
Winifred KIMMONS, Appellant,
v.
STATE of Florida, Appellee.
No. Y-35.
District Court of Appeal of Florida, First District.
October 10, 1975.
Rehearing Denied December 2, 1975.
Joe J. Harrell of Harrell, Wiltshire, Bozeman, Stone, Swearingen & Hart, Pensacola, for appellant.
Robert L. Shevin, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., for appellee.
*37 SMITH, Judge.
Kimmons appeals from a judgment and prison sentence entered on a jury verdict of his guilt on a charge that he delivered a barbiturate in violation of § 893.13(1)(a), F.S. 1973. Kimmons urges on appeal that his entrapment defense was established as a matter of law.
The issue is whether the evidence viewed most favorable to the State demonstrates that, at a time when appellant Kimmons had no intention to deliver drugs, agent Cardwell induced Kimmons to commit the crime by offering and paying Kimmons eighteen dollars for six capsules of a barbiturate. If at the time of the encounter Kimmons already had the intent and predisposition to commit an offense of the character charged, his conviction will not be vitiated by Cardwell's conduct furnishing an opportunity to commit the offense. See Lashley v. State, 67 So.2d 648 (Fla. 1953); Spencer v. State, 263 So.2d 282 (Fla.App. 1st, 1972).
On December 1, 1973, agent Cardwell approached Kimmons pursuant to plan and asked to buy drugs. Cardwell and other agents had previously received information from a number of sources, particularly two fifteen year-old girlfriends of Kimmons' daughter, that Kimmons had delivered drugs to minors. One of the young girls told the agents and later testified that Kimmons furnished her drugs and on one occasion took sexual liberties with her while she was under the influence of the drugs.
After Kimmons and Cardwell talked about buying and selling drugs on December 1 and 12, 1973, and January 10, 1974, Kimmons delivered barbiturates to Cardwell for cash on January 10, 1974. Agent Cardwell was the moving party who by requests for drugs initiated and sustained the conversations leading to the purchase. It is virtually undisputed that, prior to December 1, neither Cardwell nor any other agent had information that Kimmons had engaged in the sale, as distinguished from the delivery, of controlled substances to minors or anyone else. Yet by their verdict the jury accepted the disputed testimony of agent Cardwell that, on each of the three occasions when he offered to buy drugs from Kimmons for money, Kimmons replied receptively and encouragingly. The issue then is whether Kimmons' evident disposition unlawfully to deliver controlled substances, as demonstrated by his prior conduct reported to the agents and described to the jury, was a sufficient predicate for the agent's proposal on December 1, 1973 and thereafter that Kimmons deliver drugs for cash.
We hold that the trial court properly submitted the case to the jury. While we cannot deny that public conscience and sentencing judges may discriminate between the mere delivery of controlled substances and their delivery for pecuniary profit, Kimmons was charged not with selling but with delivering drugs [§ 893.13(1)(a), F.S. 1973]. The delivery of drugs was the offense which Kimmons was predisposed to commit. We recognize that agent Cardwell was a prospective purchaser of drugs, not a casual solicitor, and we do not condone State overtures which instill hopes for pecuniary gain in the mind of one whose predeposition is only to deliver, on request or otherwise, without acquisitive motives. But here there was evidence from which the jury could find that Kimmons was previously disposed for sexual motives to deliver drugs to a fifteen year-old girl. If the jury could so find, the State was justified in making financial bait available to one whose prior deliveries were thus acquisitive and purposeful.
Kimmons invites us to reformulate the entrapment defense to proscribe prosecutions resulting from State conduct which is likely to tempt and ensnare those who would normally avoid crime as well as those who seek the criminal opportunity. The test proposed is an objective one which shifts attention away from the particular *38 accused's mental state and concentrates instead on "whether the police conduct revealed in the particular case falls below standards, to which common feelings respond, for the proper use of governmental power." Sherman v. United States, 356 U.S. 369, 382, 78 S.Ct. 819, 825, 2 L.Ed.2d 848 (1948) (concurring opinion); see also Sorrells v. United States, 287 U.S. 435, 459, 53 S.Ct. 210, 77 L.Ed. 413 (1932) (concurring opinion).
The United States Supreme Court in a closely divided decision has recently declined to modify the entrapment defense in the manner urged by appellant. United States v. Russell, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). That fact alone would not dissuade us from examining the issue, for the entrapment defense does not arise from the United States Constitution (Id., 411 U.S. at 432-33, 93 S.Ct. 1637) but from public policy, concerning which the State judiciary is as competent an authority within its jurisdiction as the United States Supreme Court is within its. There are intimations of the objective entrapment test in Thomas v. State, 185 So.2d 745, 747 (Fla.App.3rd, 1966) and, indeed, in our decision of Spencer v. State, 263 So.2d 282 (Fla.App.1st, 1972). But in this case we do not reach the issue of whether the test should thus be restated, for agent Cardwell's conduct  consisting principally of offering to buy drugs while posing in a role that would make his offer plausible  cannot be condemned as a matter of law under the standard contended for by Kimmons.
The trial court did not err in directing that Kimmons' new sentence of imprisonment be served consecutively with the remainder of the term from which Kimmons had been paroled, after conviction of an offense not involving drugs, at the time of this offense. Kimmons argues that his parole had effectively terminated his prior sentence so that, as in Mayo v. State, 56 So.2d 547 (Fla. 1952), there was no sentence outstanding with which the present sentence might have been made to run consecutively. But Mayo involved a pardon. A parole continues and does not terminate a sentence. Sellers v. Bridges, 153 Fla. 586, 15 So.2d 293 (1943).
Affirmed.
McCORD, Acting C.J., and MILLS, J., concur.