56 So.2d 545 (1952)
In re WASHINGTON'S ESTATE.
Supreme Court of Florida, Division B.
February 5, 1952.
Rehearing Denied February 22, 1952.
A.Z. Adkins, Jr., Gainesville, for appellants.
Lazonby, Dell, Graham & Mills and L. William Graham, all of Gainesville, for appellee.
MATHEWS, Justice.
This is an appeal from the Circuit Court of Alachua County from an order affirming a final order of the County Judge's Court.
Sophronia Washington died December 1, 1939, apparently intestate. She owned and was living on a tract of land in the Sugar Hill Section of Alachua County. She left as heirs several children and grandchildren.
Approximately 11 years thereafter on August 22nd, 1951, Albert Washington, one of her sons, filed a petition in the Probate Court seeking to establish and probate a copy of an alleged lost Will and Testament of the deceased. Several of the heirs of Sophronia Washington filed their motions to strike and motions to dismiss. The County Judge denied the motions to strike and after some further pleading and testimony, an order was entered establishing copy and probating the same. An appeal to the Circuit Court resulted in a reversal for further proceedings.
After the case was reversed, the County Judge heard further testimony and then made an order re-establishing and admitting to probate, the copy of the alleged lost Last Will and Testament. On appeal to the Circuit Court, the order of the County Judge was affirmed and this appeal is from that order.
The appellants have propounded three questions which may be consolidated into one. The real question is: Was the evidence sufficient to overcome the presumption of revocation, which arose when such will was not found after the death of Sophronia Washington?
There can be little question about what the law is in this state concerning lost or destroyed wills. The rule is well established that when a will has been lost or destroyed, the presumption of law is that the testator destroyed it with intention of revoking it, and the burden of proving to the contrary is on the propounder of the will. See Redfearn's Wills and Administration of Estates in Florida, 2 Ed., Section 114; Potts et al. v. American Legion Hospital for Crippled Children, 160 Fla. 225, 34 So.2d 561.
In order to determine the correctness of the order of the Circuit Court affirming the order of the County Judge, it is necessary that we review the testimony in this case.
*546 H.C. Baldwin, an attorney in Gainesville, drew a will in 1939. He received word that the deceased wished to talk to him about drawing a will. He went out to see her and she told him what she wanted in the will. The deceased did not tell the lawyer about any of the children except Albert. The attorney heard about other children, and then went back to see her and advised her that the other boys should be mentioned in the will. He was then told to fix the will like it should be so that Albert got the property. He then drew a rough draft of the will, took it out to her house and read it to her. She said it was fine and he then went back to his office and put it in final form, after which he took it back to the deceased's home where it was read to her and duly executed. The will, which he drew, definitely carried out her instructions as to how she wanted the property left. In response to the question: "What were those instructions?", he replied, "Albert was to get everything because he was the only one that had taken care of her and had ever done anything for her.". He produced a carbon copy of the will which was definitely identified as the carbon copy of the will which he had prepared for the deceased, the original of which had been executed. He did not know where the original will was, but Sophronia Washington told him just before she died that the will was in a safe place.
In the original hearing before the County Judge Deborah Washington, the wife of Albert Washington, the chief beneficiary, testified that the will was read in her presence to Sophronia Washington and was executed in her presence. She also testified to conversations she had heard previous to the execution of the will.
In addition to testifying as to what happened at the time of the execution of the will, she also testified that there was a jar at the head of the bed of Sophronia Washington on Monday before she died; deceased sometimes kept papers in the trunk and in the jar; on Sunday after the death of deceased, Pete and Charlie Washington, two of the children of Sophronia Washington, went to the house of Deborah Washington and asked her where their mother's deed was; after that she saw them go in the house and they were the first to go in after the body was removed; she then went in the house and found the jar missing, the trunk open and ransacked, but found no will.
In reversing the County Judge on his first order admitting the will to probate, the Circuit Judge stated that the County Judge erroneously allowed the copy of the will in evidence because its admission depended upon the testimony of the witness, Deborah Washington, who was incompetent to testify under Section 732.27, Subsection 3, and Section 731.03, Subsection 9, F.S.A. The Circuit Judge further found in his order that it appeared from the pleadings that H.C. Baldwin, a practicing attorney, drafted the purported will, attended its execution, and supplied the alleged copy, and he was not called upon to testify concerning the genuineness of the copy of the will, which was introduced in evidence, and that the ends of justice required a reversal and reconsideration of the case by the County Judge upon the existing record without the testimony of Deborah Washington, and plus the additional testimony indicated by H.C. Baldwin.
It is apparent that the ruling of the Circuit Judge reversing the County Judge on the first hearing excluded the testimony of Deborah Washington only as to the circumstances surrounding the execution of the will; such as, hearing the will read and seeing it executed. There is no prohibition against the testimony of Deborah Washington, as to facts which she saw or knew about after the death of Sophronia Washington, as to the activities of Pete and Charlie Washington.
Ed Hines testified that he had lived in the community 14 years and he knew the deceased before he moved there, about 20 years before she died. He visited her and talked to her frequently. She was in bed about 3 days before she died. He was present when the will was signed. Mr. Baldwin and Joe Berman were also there. He had not seen the will since the day it was signed. He was in the house a day or two before she died. The last time he talked to her she told him about leaving everything to *547 Albert Washington because he had been her sole support. He, himself, knew it to be true that Albert had been her sole support. At the time she signed the will she knew what she was doing and was carrying out a long standing intention to give her property to Albert. He didn't know of anything that Pete or Charlie ever did for her. When she wanted or needed anything Albert would see that she got it. He absolutely knew that.
All of the above testimony was uncontradicted.
The law controlling this case and the contention of the appellants is: "Where a will, which cannot be found following the death of the testator, is shown to have been in his possession when last seen, the presumption is, in the absence of other evidence, that he destroyed it." (Emphasis supplied.)
The County Judge found that there was other evidence sufficient to overcome the presumption. The Circuit Judge affirmed the findings of the County Judge. There was sufficient evidence to support the findings of the County Judge and for the affirmance by the Circuit Judge. (Emphasis supplied.)
An important portion of the "other evidence" is that these two brothers of the beneficiary immediately after the death of their mother made inquiry about deeds and where she kept them; they went to the home of their deceased mother and ransacked the trunk and after the death of their mother and after they went in the house, the jar in which she kept her papers was never seen again. Of course, there is no presumption that these sons of the deceased took the jar containing the will, or found the will in the trunk and destroyed the will, but this testimony with reference to their actions remains undenied by either of them, and unexplained in this record. This testimony coupled with the long standing intention of the deceased to leave all of her property to her son, Albert, communicating such desire to her lawyer, having a will drawn, read to her in the presence of witnesses and then executed by her, and after the execution to continue to talk about it until almost the day of her death, and saying that it was like she wanted it and it was in a safe place, was "other evidence", undisputed, and was amply sufficient to sustain the order of the County Judge, establishing and probating the carbon copy as being a copy of a lost Last Will and Testament of Sophronia Washington, and the Circuit Judge was correct in affirming such order.
Affirmed.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.