LETTS, Judge.
In this ease the appellant estate petitioned to establish a lost or destroyed will by way of an alleged “correct copy” plus the testimony of the personal representative. The court below denied the petition. We reverse.
There is a dearth of Florida law as to what constitutes a “correct copy.” The problem here presented concerns Chapter 733.207(3) of the Florida Statutes (1977) which provides:
No lost or destroyed will shall be admitted to probate unless formal notice has been given to those who, but for the will, would be entitled to the property thereby devised. The content of the will must be clearly and distinctly proved by the testimony of two disinterested witnesses, or, if a correct copy is provided, it shall be proved by one disinterested witness. (emphasis supplied)
In the instant case the decedent’s lawyer and named personal representative[1] first prepared a handwritten draft of a proposed will and later, with the exception of the insertion of the actual name of the personal representative, had an identical typewritten draft prepared and delivered to the decedent. This typewritten version left spaces for the insertion of; the legal description of a parcel of real estate already fully described by street address, appropriate dates and finally spaces for the signatures of the testator and witnesses. There were also two very minor and obvious typographical errors corrected in pencil on this typewritten version.
The decedent then retyped the final original herself which, according to the testimony of the lawyer, was once more almost identical to the earlier drafts except for the insertion of the legal description in the space left therefor and some trivial address changes for one or two of the named beneficiaries. Apparently this synonymity was established at a proofreading session between lawyer and client upon the conclusion of which two neighbors were immediately summoned to witness the execution of the will. They did so, but were not informed as to its contents.
The will itself, coupled with a pour over provision into a trust, left the bulk of the estate to decedent’s sister and to charity, subject to a life estate in the decedent’s husband. The record is replete with evidence that such is exactly what this strong-willed and alert-minded woman intended.
Upon her death, followed by her husband’s a week later, the husband’s relatives came to town and took over. The original of the charitable will was never found and all that remained was the' two aforede-scribed drafts.
The husband’s relatives, who will inherit if the estate is intestate, contend that the word “copy” mandates an identical transcript, or double, of an original writing and cite various law dictionaries and one case for that proposition. See In Re Jane’s Estate, 18 Cal .2d 512, 116 P.2d 438 (Cal.1941). On the other hand the personal representative claims that a draft with overwhelmingly similar “content” and only insignificant clerical insertions should satisfy the requirements of the statute. See Nugent v. Greenfield Life Association, 172 Mass. 278, 52 N.E. 440 (1899). To that the relatives respond, in the alternative, that even if it is true that a draft with overwhelmingly similar content and only insignificant clerical insertions will suffice, the insertions here are substantial, significant and render the draft produced clearly dissimilar.
We first hold that, in our view, the differences here between the lost will and the *1036 typewritten draft are not significant enough to refute the correctness of the draft. The two are indeed identical in content and wording, except for trivial typographical errors and single digit corrections of some street addresses of otherwise fully identified beneficiaries. The lone exception is the insertion of a legal description to a parcel of real estate. This parcel was already fully set forth by street address and there would be no problem whatever in distributing the estate if said legal description had been excluded altogether. To insert it is good practice but in effect redundant. All this being so, we find the typewritten draft to be substantially identical to the executed will and therefore correct.
We are aware that when a will is lost or destroyed, the presumption is that the testator destroyed it with the intent of revoking it. In Re Washington’s Estate, 56 So.2d 545 (Fla.1952). However, we feel the presumption is overcome here. Only a week before her unexpected death, the decedent discussed her charitable bequests[2] and she had a history of giving to educational institutions. She was well aware that her feeble, hospitalized husband had a limited life expectancy. The decedent was also knowledgeable and conscious of the consequences of taxation. All this being so, we are persuaded that the estate has carried the burden of proving that she did not intend to destroy the will and thus enrich her husband’s relatives.
The problem remains as to whether the draft presented, satisfied the statutory requirement of a “correct copy.” We are unhappy with the choice of legislative language in this entire section. For example, if there are two disinterested witnesses, there is apparently no requirement to have any written material to establish the will and said witnesses can establish it merely by testifying as to its “substance.” However, if, as here, there is only one disinterested witness, the standard then requires a “correct copy.” The question then is what the legislature had in mind when choosing these two words.
The relatives cite what appears to be the prevailing law in other jurisdictions to the effect that a copy must be an identical instrument to the original. See 9A Words and Phrases, 336 et seq. (1960). Under this definition the present draft would be unacceptable for it is neither a xerox nor a carbon copy and it is not identical.
We must then interpret what the legislature intended when it placed the word correct before the word copy. Is “correct” redundant? Can one have an in correct copy? Definitions of the word correct, in the sense it is used here, run the gamut from identical to “conforming to or agreeing with fact, logic or known truth.” Webster’s Seventh New Collegiate Dictionary (1971). Another frequent comparative adjective is “accurate” and in the same dictionary the synonyms for correct are; accurate, exact, precise and right. In that same order, each is given a higher standard of fidelity to the original[3] and of “right” it is said:
Right is close to correct but has a stronger positive emphasis on conformity to fact or truth rather than mere absence of error or fault.
Returning now to the legislative purpose, it is obvious that it was to facilitate the carrying out of every testator’s intent notwithstanding that the actual original is *1037 missing. This intent is the polestar of all construction in probate matters. In Re Johnson’s Estate, 347 So.2d 785 (Fla. 1st DCA 1977), aff’d 359 So.2d 425 (Fla.1978). We are united that the record clearly reflects that this decedent intended to dispose of the bulk of her property in the manner set forth in the typewritten draft, rather than have it pass to her husband’s relatives. The decedent and her attorney proofread the original will against the typewritten version and the attorney testified as to the insignificant differences between the one and the other. Accordingly, we find the draft to be an accurate and correct reflection of the lost original and we construe it to satisfy the statutory language. It may not be an identical instrument, but it is an accurate one and, as we have said, the previous subparagraph of the statute does not require any kind of copy at all if two witnesses be available. That being so, surely an accurate and correct draft, coupled with the testimony of one witness, should satisfy the legislature’s requirement and intent. In this context, we see no difference between a draft and a copy. Neither the one nor the other would be signed and the purpose of both would be to accurately reflect the original. If the document here presented had been a xerox copy, we would certainly not have excluded it because of insignificant clerical insertions made on the original after the xerox copy was produced. To do so would both defeat the purpose of the statute and patently frustrate the testator’s intent.
Notwithstanding our conclusion, arrived at in so labored a manner, we are concerned about the well reasoned language adopted by the court below. In denying probate it said:
The key word [two words would be more accurate] as stated in the above statute is “correct copy.” It is in fact a copy of a draft which was alleged to have been copied by decedent . . .. The facts and testimony are wholly insufficient to prove the contents of the document signed by the decedent.
We disagree, but recognizing the far reaching effect of our decision and conceding its novelty, we deem the issue to be of great public interest, and hereby certify the following question to the Supreme Court:
UNDER CHAPTER 733.207(3) OF THE FLORIDA STATUTES (1977) DOES THE LANGUAGE “CORRECT COPY” MANDATE AN IDENTICAL COPY SUCH AS A CARBON OR XEROX COPY OR WILL A SUBSTANTIAL CORRECT COPY SUFFICE?
This cause is reversed and remanded for the entry of a judgment in accordance herewith.
REVERSED and REMANDED.
DOWNEY, C. J., and DAUKSCH, J., concur.

. A retired IRS agent with no established law office or secretarial staff.

. E. g. “I (the witness) said you (the decedent) said your family didn’t need it and they all have plenty, and she (the decedent) said that’s true. And I’ll say it again. She (the decedent) says my money is going to my favorite charities and that was the Sunday before she passed away.”

. Syn. correct, accurate, exact, precise, nice, Right mean conforming to fact, standard, or truth, correct usu. implies freedom from fault or error as judged by some standard; Accurate implies fidelity to fact or truth attained by exercise of care; Exact stresses a very strict agreement with fact, standard, or truth; Precise adds to exact an emphasis on sharpness of definition or delimitation; Nice stresses great precision and delicacy of adjustment or discrimination; Right is close to correct but has a stronger positive emphasis on conformity to fact or truth rather than mere absence of error or fault. Webster’s Seventh New Collegiate Dictionary (1971).