416 So.2d 513 (1982)
In the ESTATE OF Arlethia PARSON, Deceased.
Forrest PARSON, Appellant,
v.
Robert J. HENDLEY, Jr., Individually and As Personal Representative of the Estate of Arlethia Parson, Deceased, Eddie Hendley Felder, Henry Hendley, Charlie Hendley, L.C. Hendley, Charlie Hendley, Rosa Mae Hendley, Elizabeth Hendley, Wallace Hendley, and James L. Hendley, Appellees.
No. 81-894.
District Court of Appeal of Florida, Fourth District.
July 7, 1982.
*514 Louis L. Williams and Mikel D. Greene of Farish, Farish & Romani, West Palm Beach, for appellant.
Cunningham & Cunningham, and James E. Weber of Weber & Fulton, West Palm Beach, for appellees.
HERSEY, Judge.
Application of the so-called "Dead Man's Statute," Section 90.602, Florida Statutes (1979), precluded appellant from testifying in support of his position that a "lost" will had not been revoked. We are called upon by this appeal to decide, inter alia, whether exclusion of that testimony was error.
Arlethia Parson died on April 2, 1980. A petition seeking to have her estate administered in intestacy was filed by a nephew, Robert Hendley, Jr., who was appointed personal representative. Shortly thereafter, appellant, Forrest Parson, located a conformed copy of a will of the decedent which *515 had been executed on December 2, 1965. He filed a petition for the establishment and probate of a lost or destroyed will. The matter then proceeded to final hearing.
There was some indication in the testimony that Arlethia Parson believed that the 1965 will had never been revoked. It was established, on the other hand, that Arlethia Parson initiated litigation against Forrest and Ruby Parson in 1980 to reform certain deeds alleged to have been executed by reason of their misrepresentations to her. This evidence was introduced to show that Forrest and Ruby had fallen out of favor with the decedent subsequent to execution of the 1965 will. The evidence further shows that one or more of the heirs-at-law had access to the home of Arlethia Parson both before and after her death. Presumably the original will was once located somewhere in that home.
At the close of appellant's presentation in the trial court, appellees' motion for an involuntary dismissal was denied. Final judgment was ultimately rendered adverse to appellant, based upon findings that while the conformed copy of the will had been established as a correct copy of the 1965 will, it had not been satisfactorily proved that the 1965 will was not subsequently revoked.
Decedent's heirs-at-law, destined to share in the estate in the absence of a will, are various members of the Hendley family: brothers, a sister, and nephews and nieces of the decedent. The Hendley's are the real parties in interest/appellees here.
The will, on the other hand, favors Forrest Parson, a stepson of decedent, (and his wife, Ruby Parson, not a party to this appeal) the actual appellant here.
The trial court began, as do we, with the presumption that a will which was in the possession of the testator prior to death and which cannot be located subsequent to death was destroyed by the testator with the intention of revoking it. Schaefer v. Voyle, 88 Fla. 170, 102 So. 7 (1924); Stewart v. Johnson, 142 Fla. 425, 194 So. 869 (1940); In re Evers' Estate, 160 Fla. 225, 34 So.2d 561 (1948); In re Washington's Estate, 56 So.2d 545 (Fla. 1952); Upson v. Estate of Carville, 369 So.2d 113 (Fla. 1st DCA 1979). The presumption may only be overcome by competent and substantial evidence, the lack of which requires a finding of revocation. In re Estate of Baird, 343 So.2d 41 (Fla. 4th DCA 1977). (Proof of nonrevocation in a proceeding to establish a lost or destroyed will is the subject of an annotation in 3 A.L.R.2d beginning at page 949.)
Appellant argues that evidence of the fact that "persons with adverse interest in destroying a will have had an opportunity to do so may serve to rebut the presumption [of revocation]...." In re Estate of Baird, supra. The fact that one or more of the appellees had access to the house where the will was presumably located is only one factor to be considered by the trial court in the process of determining whether the presumption of revocation has been overcome. See, e.g., In re Washington's Estate, supra. Evidence of access by no means automatically overcomes the presumption of revocation. In Upson v. Estate of Carville, supra, the circumstances surrounding the will's disappearance plus evidence of access was sufficient to overcome the presumption of revocation. However, in In re Estate of Baird, supra, the evidence of access was insufficient to overcome the presumption. We have no reason to assume that the trial court failed to consider access as a relevant factor, assigning it appropriate weight among the findings of fact upon which the final judgment was ultimately based.
Appellant takes the position that denial of appellees' motion for involuntary dismissal constituted a ruling that a prima facie case of non-revocation had been established requiring appellees to go forward with evidence of revocation. We do not seriously fault that contention. However, the facts which gave rise in the first instance to the presumption of revocation continue to play a part in the case and may be considered, along with the testimony and other evidence subsequently adduced, in making a final determination on the issue *516 of revocation. See, e.g., In re Estate of Carpenter, 253 So.2d 697 (Fla. 1971), involving the presumption of undue influence.
We have consistently held that findings of fact by the trial judge will be presumed to be correct and are to be given the same weight as a jury verdict. Gaisford v. Frostman, 202 So.2d 790 (Fla. 4th DCA 1967). This proposition is based upon the logical premise that it is the function of the trial court to judge the weight of the evidence and the credibility of the witnesses based upon his direct observation, and this court will not substitute its judgment for that of the trial court unless there is a lack of competent and substantial evidence to support the findings upon which a final judgment is based. Hernandez v. Leiva, 391 So.2d 292 (Fla. 3d DCA 1980).
We need not tediously dissect the testimony and other evidence which the trial court properly considered. We conclude that the final judgment is supported by competent and substantial evidence.
The result might have been quite different, however, had appellant and his wife been permitted to testify. Evidence that Arlethia Parson at all times had the intention of leaving most of her worldly goods to appellant and that she believed that her will accomplished that result could not fail to have had a substantial impact on the deliberations of the trier of fact. It is therefore necessary to address the issue of the Dead Man's Statute which excluded such testimony.
Section 90.602, Florida Statutes (1979), provides:
90.602 Testimony of interested persons. 
(1) No person interested in an action or proceeding against the personal representative, heir-at-law, assignee, legatee, devisee, or survivor of a deceased person, or against the assignee, committee, or guardian of an insane person, shall be examined as a witness regarding any oral communication between the interested person and the person who is deceased or insane at the time of the examination.
(2) This section does not apply when:
(a) A personal representative, heir-at-law, assignee, legatee, devisee, or survivor of a deceased person, or the assignee, committee, or guardian of an insane person, is examined on his own behalf regarding the oral communication.
(b) Evidence of the subject matter of the oral communication is offered by the personal representative, heir-at-law, assignee, legatee, devisee, or survivor of a deceased person, or the assignee, committee, or guardian of an insane person.
(The Dead Man's Statute has been amended and renumbered from time to time but its language and effect as applied to the facts of this case and the rules of law to which we will refer have not changed in any material respect with one possible exception that will be discussed later in this opinion.) Appellant, as he must, takes the position that the statute is not applicable or has been improperly applied on the facts of this case. Because we think the issues raised are of some importance, we consider each of appellant's arguments concerning the statute.
In the ordinary situation where a creditor files a claim against an estate based upon an oral contract, application of the statute and its waiver provision (which we will subsequently consider at length) do not present undue difficulty. The creditor may not initially testify as to the content of that oral communication. He may, however, require the personal representative or a devisee having specific knowledge of the oral communication to give testimony in an attempt to establish the oral contract. That is, such an adverse witness may not refuse to testify; the statute does not create immunity from testifying. In re Estate of McClintock, 374 So.2d 93 (Fla. 2d DCA 1979). As we said, in Heebner v. Summerlin, 372 So.2d 518, 519 (Fla. 4th DCA 1979):
The legislative intent in passing the Dead Man's Statute was to provide a shield when, by reason of death, a party to a transaction is prevented from testifying. It is not to provide a privilege akin to the privilege against self incrimination.
*517 In that case we ultimately held that the Dead Man's Statute would not be applied to prohibit a witness from giving testimony adverse to his own interests. It is also well established that when, for example, the personal representative is subpoened and thus required by the interested person to testify, the Dead Man's Statute has not been waived because he is not testifying "on his own behalf." In re Estate of Grant, 123 So.2d 560 (Fla. 2d DCA 1960). Application of these elementary principles to the case at bar, however, presents some unusual problems.
Appellant maintains that: (1) the Dead Man's Statute should not be applied for policy reasons; or (2) the statute does not apply here because of the nature of these proceedings; or, in the alternative, (3) that appellant fits within an exclusion from the statute established by Section 90.602(2), Florida Statutes (1979); or (4) an exception to the statute established by case law. It is argued by appellant that the common law prohibition against testimony by an interested party exists today only in the anachronistic Dead Man's Statute and even this vestigial remnant has been criticized by legal scholars. See McCormick, Evidence, § 65 (2d ed. 1972) and Wigmore, Evidence, § 578 (3d ed. 1940). As part of this same policy argument, appellant explains that unlike a case in which a creditor claims against an estate on an oral contract and the estate has no means of rebutting the testimony of an interested party to the transaction, the estate here has a means of defending itself. For example, says appellant, the personal representative could refute appellant's testimony and that of his wife by introducing a subsequent will or by introducing some evidence that the original will had been revoked, or by introducing testimony of the heirs-at-law in support of their own respective positions.
Revocation may be accomplished by the simple, quiet and unpublished act of throwing a will in the trash with the intention of revoking it. Recognizing that possibility (and innumerable variations on that theme) the law creates a presumption of revocation under the circumstances present here. Appellant's argument that it is a simple matter for the estate to produce evidence to counter appellant's proferred testimony that revocation did not occur simply does not comport with common experience. We therefore reject that argument as being contradicted by logic and experience and also because it is supported neither by the statute nor by case law.
We also deem it inappropriate for this court in this case to contemplate whether or not the Dead Man's Statute has outlived its usefulness. We decline to exercise that value judgment even if we have the power to do so.
Appellant argues that the Dead Man's Statute was erroneously applied by the trial court. Specifically it is contended that a proceeding in the probate division to probate a lost or destroyed will is not an action or proceeding against a party who stands in the capacity of a representative of the decedent. Appellant indicates that the purpose of the statute is to protect the interest of the decedent, and that the interests of the estate (the decedent) cannot be adversely affected by a proceeding to probate a will.
We address first the technical argument that a proceeding to probate a lost or destroyed will is not an action or proceeding against one representing (or having an identity of interest with) the decedent within the contemplation of the statute. The test of whether the statute applies in a particular circumstances does not depend upon semantics or technical niceties. The questions to be answered in each instance are (1) whether the witness has a personal and immediate interest in the issue being litigated (in which event the law presumes a tendency or at least a temptation to therefore give false, selfserving testimony) and (2) whether the other party to the communication about which testimony is elicited is deceased so that the personal representative is deprived of the decedent's version of the communication. Disbro v. Boyce, 124 So.2d 756 (Fla. 3d DCA 1960); Traurig v. Spear, 102 So.2d 165 (Fla. 3d DCA 1958). An exception, not material *518 here, permits testimony concerning execution of a testamentary document.
Appellant has such an interest as primary devisee under the will sought by him to be established. It is irrelevant to suggest, as does appellant, that his interest is not "antagonistic" to the estate. Acceptance of appellant's suggested test would nullify the statutory safeguard. If the decedent in good faith had entered into an oral contract or had incurred a debt, it is presumed that she intended to perform the contract or repay the debt. It could therefore be argued that the surviving party does not have an interest which is truly "adverse" or "antagonistic" to the decedent or her estate. For that reason the test is not whether a claim is antagonistic but rather whether the claimant stands to gain by his own testimony. Appellant clearly falls into that category.
The second prong of appellant's argument is based upon precedent and section 2 of the statute, each of which is said to create an exception or exclusion from the operation of the Dead Man's Statute.
Appellant first postulates that declarations of a decedent have always been deemed admissible to show dispositive intent. Thus, argues appellant, testimony as to those oral declarations of the decedent are admissible.
Two cases are cited for the proposition that evidence as to declarations of a testator is admissible: In re Estate of Deane, 153 So.2d 26 (Fla. 3d DCA 1963); In re Burton's Estate, 45 So.2d 873 (Fla. 1950). Both cases are correctly cited for the proposition stated. The difficulty is that neither case (nor any other we have found) holds that testimony as to such oral declarations is immune from objection based upon the Dead Man's Statute. In fact, in recognition of the probability that upon remand to the trial court the petitioner would be precluded by the statute from testifying, the Burton court suggested that "the petitioner may be in a position at the time of trial to offer testimony of disinterested third persons." Id. at 875. We therefore conclude that the precedents (involving oral declarations of a decedent's intent) do not establish the exception for which appellant contends. See, e.g., Leighton v. Harmon, 111 So.2d 697 (Fla. 2d DCA 1959).
It is also our conclusion that Section 2 is not intended to create an exclusion from operation of the statute. We view that section as simply a codification of the circumstances under which a waiver of the statute may occur.
The section in question provides that when an individual in one of the categories enumerated by the statute "is examined on his own behalf" regarding an oral communication of the decedent the prohibition against such testimony established by the preceding section does not apply. This does not mean, however, that a witness with a direct pecuniary interest in the issue being litigated may be called by his own counsel to testify "on his own behalf" and thus become immune from the statutory prohibition. The two sections must be read together. The "oral communication" referred to in Section 2 is only that oral communication between the interested person and the decedent which the interested person (referred to in section 1) has placed in issue. There must be "a person interested" who is claiming adverse to the interest of the witness (the latter being in one of the categories listed in section 1). In other words, there must be both an interested person and a witness against whom that interested person has brought or become involved in an action or proceeding, before subsection 2 has any application. Put another way, we read Section 90.602(2) as saying that if a personal representative (or another representative of the decedent's interest, named in Section 90.602(1)) voluntarily testifies on an issue raised by a party adversely interested (paragraph 1's "interested person") concerning an oral communication of the decedent, then the "interested person" is no longer prohibited by the statute from testifying as to that same oral communication. Applying that analysis to the present case, appellant is an interested person under section 1. He is thereby disqualified *519 from inclusion as one of those parties listed in section 2.
On the other hand there is some support for the view that at least under an earlier version of the statute, Comp.Gen.Laws 1927, § 4372, appellant would not be precluded from giving testimony under such circumstances. In Barber v. Barber, 128 Fla. 645, 648, 175 So. 713, 715 (1937), the court stated, as one of two alternative grounds for its holding, that the parties in question "were within the exception noted in the concluding part of the statute, ..." (Emphasis added). The Barber case has been interpreted in Mathews v. Hines, 444 F. Supp. 1201 (1978), as establishing that an individual may be a member
of both classes under the statute: those protected against testimony, and those precluded from testimony. Such persons are claimed against in their representative capacity in a lawsuit, but also possess a claim of right or interest against a decedent or his estate. In other words, the same conditions that create representative capacity for a person also confer interest upon that person. In such circumstances, the person who is a member of both classes under the statute (1) is free to testify on his own behalf concerning transactions or communications with the decedent, Barber v. Barber, 128 Fla. 645, 175 So. 713, 715 (1937); but (2) such testimony may waive his protection and objection under the statute against testimony about transactions or communications with the decedent. Macknet v. Rogers, 119 So.2d 72, 73-4 (Fla. 2d DCA 1960).
Even if that interpretation has continued viability in view of revision of the statute, it does not innure to appellant's benefit. Only if the will was not revoked does appellant fall within the category of persons protected "against testimony." The trial court expressly found to the contrary.
We do not mean to appear to dismiss the Barber rationale cavalierly. The facts of the instant case present more clearly than could a hypothetical the dilemma which an indiscriminate application of the rule in Barber might produce. In candor, we do not view changes which have been made in the dead man's statute as justifying a different result on Barber facts were we to be presented with such facts in a case today. The result would in our view be unfortunate and somewhat of a self-contradiction at least in terms of policy. For that reason we do not approve of the Barber rule which permits a witness to testify solely because he falls in both category 1 (protected against testimony) and category 2 (prevented from testifying). Having registered this disapproval as an expression of our support for a change in the rule should the Supreme Court have occasion to revisit the issue, we reiterate, in order to redefine, the narrow holding that distinguishes the present case from Barber. We hold that where an individual may or may not have status as a category 1 witness, depending upon how an ultimate issue in the case is decided, then the prohibition of the statute applies, rather than the exception which Barber might seem to produce. Thus appellant is a devisee under and personal representative of the 1965 will only if the 1965 will is viable and was not revoked. Barber, broadly applied, might permit appellant to boot-strap his own status. That is, he might be able to argue that his status as a category 1 person is established by the very will in issue so that his status as a category 2 person should not prohibit him from testifying. We are reasonably clear that Barber intended no such result. In any event we feel the rule has been properly and appropriately avoided here. The trial court found that the 1965 will had been revoked. Appellant thus never attained category 1 status.
We thus conclude that appellant is precluded by the Dead Man's Statute from testifying concerning oral communications of the decedent and that the trial court properly excluded appellant's testimony.
Since the trial court did not err in excluding appellant's testimony and because the final judgment is otherwise supported by substantial competent evidence, we affirm.
AFFIRMED.
*520 HURLEY, J., concurs.
LETTS, C.J., concurs specially with opinion.
LETTS, Chief Judge, concurring specially.
This opinion as written, is a masterpiece and I find it irresistible. However, I must confess I believe that the language of the "Dead Man's Statute" presents a classic paradox especially when it is applied to facts such as we have here.