439 So.2d 977 (1983)
In re the ESTATE OF Helena HATCHER, Deceased.
Barbara MESSER, Personal Representative of the Estate of Helena Hatcher, Deceased, Appellant,
v.
William L. DODD, Jr., Lillian Dodd and Leo Catsonis, Appellees.
No. 82-1906.
District Court of Appeal of Florida, Third District.
October 25, 1983.
*978 Kenney, Boswell & Kaufman and Timothy H. Kenney, Palm Beach, for appellant.
William A. Daniel, Jr., Stuart, for appellees.
Before HENDRY, HUBBART and JORGENSON, JJ.
*979 HENDRY, Judge.
This cause comes before the court following hearings by the trial court ostensibly to determine whether the decedent, Helena Hatcher, intended to change her domicile permanently from Florida to West Virginia. At issue are two wills, one executed in Florida (the "Miami will") which left the entire estate to decedent's granddaughter and a second, subsequent will executed in West Virginia (the "West Virginia will") which left $7500 to the granddaughter and the balance of the estate to decedent's brother and sister-in-law. The trial court, in its order, findings of fact, and conclusions of law stated that:
The issue which was tried by this Court was confined solely to whether, on July 14, 1981, Mrs. Hatcher's domicile was the State of West Virginia when she executed her West Virginia will.
The next paragraph stated:
The initial burden of proof was placed upon Petitioners by the Court and Petitioners proved that Mrs. Hatcher executed a subsequent will which was valid under both Florida and West Virginia law and which will expressly revoked her prior Florida Will.
Because we find that the trial court's order was overbroad in light of the issues raised by the pleadings as well as the enunciated purpose of the hearings, we affirm the trial court's determination of the decedent's domicile, but we remand for further hearings on the substantive validity of the West Virginia will.
Mrs. Hatcher died of cancer on July 20, 1981, in Charleston, West Virginia. Until July 12, she had been a patient at Jackson Memorial Hospital. She was released on that date because her disease had progressed to its final stage and death was imminent. That same day, decedent left Miami, where she had been a long time resident, accompanied by Lillian Dodd, her sister-in-law. On July 13, appellee William Dodd, decedent's brother, contacted appellee Leo Catsonis, a Charleston attorney, about writing a new will for decedent. Mr. Catsonis went to the Dodds' home that evening and spoke with the decedent about the disposition of her property. Also that same evening, Dr. Alfred Pfister went to the Dodds' home at William Dodd's request, to meet Mrs. Hatcher and to examine her. On July 14, the decedent executed her West Virginia will which expressly revoked the Miami will, and she also executed a general power of attorney in favor of William Dodd. On July 19, the decedent was admitted to Charleston Medical Center in a coma. She died early the next morning. Both wills were immediately filed for probate in their respective locales.
Appellees filed a caveat with the trial court in Miami pursuant to section 731.110, Florida Statutes (1981), and a petition for revocation of probate on the basis that a valid subsequent will had been executed by the decedent. Both the petition and its supporting memorandum of law stated that in accordance with section 732.502(2), Florida Statutes (1981), the Florida trial court lacked proper jurisdiction and venue to determine whether the subsequent will was valid and that a West Virginia court should be allowed to determine whether the decedent had formed a present intention to make West Virginia her domicile when she executed the West Virginia will. Hearings were held on the petition during the course of which the judge and both attorneys for the parties made statements reflecting the fact that the hearing was concerned solely with the issue of domicile. The final order found that the decedent was a West Virginia domiciliary when she executed the West Virginia will and that said will was valid.
At the outset it must be stated that the trial court had jurisdiction to rule on the validity of the West Virginia will because all of the decedent's property remained located in Dade County, Florida. Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); In Re Estate of Roberg, 396 So.2d 235 (Fla. 2d DCA 1981); Biederman v. Cheatham, 161 So.2d 538 (Fla. 2d DCA 1964). Additionally, in In Re Estate of Swanson, 397 So.2d 465 (Fla. 2d DCA 1981), the court there discussed whether a Florida court had jurisdiction to *980 rule on the substantive validity of a will executed in another state. The court found that section 732.502(2), Florida Statutes (1981) is concerned with procedural validity only; that is, whether there is compliance with the formal procedural elements of execution. Substantive considerations, such as mental capacity or undue influence, are not dealt with by the statute. When property[1] is devised, the common law dictates that the validity of the will is to be determined according to the law of the situs of the property. The court went on to hold that the common law gives persons challenging a foreign will the right to attack that will in a Florida court, on substantive grounds, based on their interest in property located in Florida. Id. at 466.
Subject matter jurisdiction  the power of the court to adjudicate the class of cases to which the particular case belongs  is inchoate; the jurisdiction and power of a court remain at rest until called into action by some suitor. The action of the court must be called into exercise by pleading and process. Florida Power and Light Co. v. Canal Authority, 423 So.2d 421, 424 (Fla. 5th DCA 1982). Florida law clearly holds that a trial court lacks jurisdiction to hear and to determine matters which are not the subject of proper pleading[2] and notice. Bartolucci v. McKay, 428 So.2d 378 (Fla. 5th DCA 1983); Fine v. Fine, 400 So.2d 1254 (Fla. 5th DCA 1981); Defreitas v. Defreitas, 398 So.2d 991 (Fla. 4th DCA 1981). In short:
If a court should render a judgment in a case where it had jurisdiction of the parties, upon a matter entirely outside of the issues made, it would, of necessity, be arbitrary and unjust as being outside the jurisdiction of the subject-matter of the particular case, and such judgment would be void and would not withstand a collateral attack, for upon such matter a presumption would arise that the parties had had no opportunity to be heard.
Florida Power and Light v. Canal Authority, supra, at 424-425, quoting Lovett v. Lovett, 93 Fla. 611, 112 So. 768 (1927); see also Bartolucci v. McKay, supra, at 379.
In the instant case, the petition did not ask the court to determine the validity of the West Virginia will. The hearing was to determine whether the decedent had formed a present intention to leave Florida and to make West Virginia her domicile. It was clearly erroneous for the trial court to rule on the validity of the West Virginia will without proper notice and pleadings. Additionally, by its action, the trial court foreclosed appellant's opportunity to contest the West Virginia will on the substantive grounds of mental capacity and undue influence and relieved the appellees of having to rebut the presumption of undue influence. Cripe v. Atlantic First National Bank of Daytona Beach, 422 So.2d 820 (Fla. 1982); In Re Estate of Carpenter, 253 So.2d 697 (Fla. 1971); Evers v. Zelyk, 422 So.2d 925 (Fla. 2d DCA 1982); In Re Estate of Lamberson, 407 So.2d 358 (Fla. 5th DCA 1981); Meth v. Sparaga, 406 So.2d 97 (Fla. 3d DCA 1981). We find that the trial court erred in holding the West Virginia will valid and we remand this cause to the trial court for further hearings on the substantive validity of the will.
Appellant's second issue on appeal, whether the testimony of Leo Catsonis should have been barred by section 90.602, Florida Statutes (1981) (the "dead man's" statute), has merit and warrants further discussion.
Section 90.602 states in relevant part:
(1) No person interested in an action or proceeding against the personal representative, ... or survivor of a deceased person ... shall be examined as a witness regarding any oral communication between the interested person and the person who is deceased or insane at the time of the examination.
*981 The test of when the statute applies depends on (1) whether the witness has a personal and immediate interest in the issue being litigated (in which event the law presumes a tendency or at least a temptation to give false, self-serving testimony) and (2) whether the other party to the communication about which testimony is elicited is deceased so that the personal representative is deprived of the decedent's version of the communication. In Re Estate of Parson, 416 So.2d 513 (Fla. 4th DCA 1982), rev. denied, 426 So.2d 27 (Fla. 1983); Disbro v. Boyce, 124 So.2d 756 (Fla. 3d DCA 1960). An exception to the statute allows testimony concerning execution of a testamentary document. In Re Estate of Parson, supra.
In the instant case, Mr. Catsonis was asked to meet with the deceased to discuss the writing of a new will. On the basis of this conversation, he drafted the West Virginia will, which decedent executed the next day. By the terms of the will, Mr. Catsonis was appointed personal representative of decedent's estate. He is a named party to this lawsuit by virtue of his position as personal representative under the West Virginia will. If this will is found to be the valid one, Mr. Catsonis will be paid a percentage of the value of the personal property in the estate as a fee for his services as personal representative. If the Miami will is found to be the valid one, Mr. Catsonis takes nothing. It is this situation which makes In Re Estate of Udell, 324 So.2d 703 (Fla. 4th DCA 1975), cert. denied, 336 So.2d 108 (Fla. 1976), relied on by appellees, inapposite. In that case, the attorney who had drafted the will, and who continued to represent the executor of the estate after the testator died, was allowed to testify as to the conversations he had with the deceased pertaining to the preparation of the will. The court found that any legal fees earned by the attorney would be based on quantum meruit and were not dependent upon the outcome of the will contest. In the instant case, however, Mr. Catsonis is the personal representative of the estate as well as the attorney who drafted the West Virginia will, and he will earn a fee as personal representative if that will is held valid. It is that immediate and personal interest which invokes the bar of section 90.602, Florida Statutes (1981). We find, therefore, that Mr. Catsonis is an "interested" person within the meaning of the statute. On remand, he may testify as to the execution of the West Virginia will, but he may not testify as to his oral communications with the deceased.[3]
Simply because a party is barred from testifying as to oral communications with the deceased does not mean, however, that he may not be called to testify at all. The statutory prohibition was promulgated to protect estates from claims and allegations made by persons who stood to benefit by their testimony, which claims and allegations could not be rebutted by the personal representative. The statute does not, however, provide a privilege to refuse to testify akin to the privilege against self-incrimination. Heebner v. Summerlin, 372 So.2d 518 (Fla. 4th DCA 1979). The parties to this lawsuit are not immune from testifying. In Re Estate of McClintock, 374 So.2d 93 (Fla. 2d DCA), dismissed, 378 So.2d 346 (Fla. 1979). Thus, on remand, the interested parties herein may be called to testify and are competent to testify on all relevant matters except those requiring discussion of oral communications with the decedent.
We have carefully considered all of the other issues raised on appeal and find them to be without merit.
Affirmed as to the finding of decedent's domicile when she executed the West Virginia will. Reversed and remanded for a determination of the substantive validity of the West Virginia will, subject to the limitations as discussed above.
NOTES
[1] Section 731.201(28), Florida Statutes (1981) defines property as both real and personal property or any interest in it and anything that may be the subject of ownership.
[2] "Pleadings" are listed as a declaration, complaint, petition, or cross-bill. Lovett v. Lovett, 112 So. at 776 (e.s.).
[3] We find, however, that Mr. Catsonis' testimony in the hearings on the issue of domicile was harmless error. Since there were independent witnesses also testifying as to the same events, his testimony could be considered merely cumulative.