601 So.2d 1266 (1992)
Dorothy WALTON & Rodger Walton, et al., Appellants,
v.
The ESTATE OF Mary E. WALTON, Deceased, et al., Appellees.
No. 91-2292.
District Court of Appeal of Florida, Third District.
June 30, 1992.
Rehearing Denied August 4, 1992.
Hubert G. Roberts, Hialeah, and Malcolm L. Kneale, Miami, for appellants.
Holden & Holden and Frances Holden, Hialeah, for appellees.
Before SCHWARTZ, C.J., and NESBITT and LEVY, JJ.
NESBITT, Judge.
We reverse an order denying a petition for the establishment of a lost or destroyed will. Mary E. Walton's original executed will could not be found after her death, thus giving rise to the presumption that she had destroyed the will with the intention of revoking it. We conclude that on the facts as presented to the trial court, this presumption was rebutted by competent and substantial evidence. Accordingly, we reverse the trial court's order denying the petition for the establishment of the lost will.
We begin with the presumption that a will which was in the possession of the testator prior to death and which cannot be located subsequent to death was destroyed by the testator with the intention of revoking it. In re Washington's Estate, 56 So.2d 545 *1267 (Fla. 1952); Estate of Parson, 416 So.2d 513, 515 (Fla. 4th DCA 1982), review denied, 426 So.2d 27 (Fla. 1983). The presumption may only be overcome by competent and substantial evidence, the lack of which requires a finding of revocation. In re Washington's Estate, 56 So.2d at 547 (evidence sufficient to overcome presumption that a lost will has been destroyed included intestacy heirs inquiring about certain deeds belonging to decedent, having access to decedent's home, and an opportunity to destroy the will); Estate of Parson, 416 So.2d at 515; In re of Baird's Estate, 343 So.2d 41, 43 (Fla. 4th DCA 1977).
In concluding that the trial court erred in denying appellants' petition to establish the lost or destroyed will, we reviewed the circumstances surrounding the will's execution, as well as what happened in the months preceding the decedent's death. At the decedent's request, one Earl Frederick Booth, a eucharistic minister of the Catholic church, drafted decedent's will in October 1985. The will was properly executed in the decedent's home, and the original turned over to the decedent. Booth retained a xeroxed copy of the will for himself. Being childless and widowed, the will favored Rodger Walton, the decedent's late husband's nephew, and his wife Dorothy Walton, the appellants here, as well as other family members and friends. The appellees are the decedent's heirs-at law, who will share equally in the estate in the absence of a will. They are the decedent's four surviving nieces and nephews, only one of whom was named in the will.
In August 1987, the decedent was hospitalized when she fell and broke her leg. Unable to physically care for herself because of her fractured leg, she subsequently placed herself into a nursing home. While residing in the nursing home, the decedent became very ill. In January 1988, she was transferred to a hospital, and ultimately diagnosed with terminal cancer.
In early January 1988, before decedent's transfer to the hospital from the nursing home, Marilyn Blawie, a resident of California, and a licensed attorney in California and Connecticut, visited the decedent in the nursing home. James Blawie, Ms. Blawie's husband, is decedent's nephew, and one of the four remaining intestacy heirs. Ms. Blawie testified that at that time, decedent asked her to search her home for certain documents which decedent had hidden there, as well as to retrieve the documents she had kept in her safety deposit box at her bank. Among the documents Ms. Blawie found in the home were three earlier wills. Ms. Blawie testified that she was unsure whether she had found the 1985 will among the documents hidden in decedent's home, or among the papers kept in the safety deposit box.
On February 14, 1988, decedent was transferred from the hospital back to her home. According to Ms. Blawie's testimony, decedent asked her to bring to her the documents which she had found in her home and at the bank. According to Ms. Blawie, the decedent told her that she had been "most unfair" in her 1985 will, and intended to revoke it, wishing the earlier wills to remain in effect. Nonetheless, also according to Ms. Blawie's testimony, upon receiving all the wills, decedent proceeded to tear them all up. Ms. Blawie was the sole witness to this event. Two days later, at the age of 75, the decedent died.
As stated above, the presumption that a decedent had destroyed her will with the intention of revoking it may be overcome by competent and substantial evidence. Further, the existence of persons with an adverse interest in destroying a will who have an opportunity to do so, may serve to rebut the presumption that the will has been revoked. Estate of Parson, 416 So.2d at 515; Upson v. Carville's Estate, 369 So.2d 113, 114 (Fla. 1st DCA 1979) (presumption that lost or destroyed will has been revoked is overcome when person with adverse interest in will had opportunity to destroy the will and lived in same vicinity as decedent); In re Baird's Estate, 343 So.2d at 43.
Earl Frederick Booth testified that he had visited decedent at the nursing home approximately two weeks before her death. At that time, decedent told him that Ms. Blawie, along with another intestacy heir, *1268 had visited her earlier that same morning, urging her to sign some papers. According to Booth, decedent clearly stated at that time that she wanted the 1985 will to remain as her last will and testament.
The evidence is undisputed that, although very ill in the last two weeks of her life, decedent was of sound mind. It is also undisputed that decedent was so weak that she could barely sign her name to checks in order to pay her bills. It is thus unlikely that she would have had strength enough to tear up the 1985 will, much less the three additional earlier wills, as Ms. Blawie claims.
Ms. Blawie did not appear before the probate judge, but rather her deposition was submitted to the judge after a hearing had been held and an order entered finding the presumption that the will had been destroyed had been overcome. The rule has long been established that where a trial judge bases his final order on the transcribed testimony of witnesses, the appellate court is in the same position in examining the testimony as is the trial judge. Dukes v. Dukes, 346 So.2d 544, 545 (Fla. 1st DCA 1976), cert. dismissed, 351 So.2d 1021 (Fla. 1977); Phipps v. Sheffman, 211 So.2d 598 (Fla. 3d DCA 1968); L & S Enters., Inc. v. Miami Tile & Terrazzo, Inc., 148 So.2d 299, 300 (Fla. 3d DCA 1963). Although a presumption of correctness remains present, it is not as strong as when the trial judge, as a trier of fact, personally hears and sees the witnesses. West Shore Restaurant Corp. v. Turk, 101 So.2d 123, 126 (Fla. 1958); Phipps, 211 So.2d at 599; Julian v. Julian, 188 So.2d 896, 898 (Fla. 2d DCA 1966). This is one of the rare instances in which an appellate court is permitted to reexamine a factual determination made by a trial court. In the instant case, where the probate judge changed his order only after reading the deposition of Ms. Blawie, it appears that he based his final order denying the petition to establish the lost or destroyed will on this deposition testimony. We, therefore, are in as good a position as was the probate judge to examine the transcript and determine the weight to be given the witness' testimony.
Throughout Ms. Blawie's deposition, counsel for the appellants repeatedly objected to testimony regarding the oral communications between herself and the decedent under the Dead Man's Statute, § 90.602, Fla. Stat. (1991). As far as we know, the trial judge read the entire deposition, but we do not know whether he took into account the appellants' objections. As a result, we find that Ms. Blawie's testimony as to her oral communications between herself and the decedent is barred under the Dead Man's Statute, since she is married to one of four surviving intestacy heirs. See generally Camodeca v. Camodeca, 464 So.2d 662, 663 (Fla. 2d DCA 1985) (wife was an interested person where she held joint interest in money sought by husband from a decedent's estate; court noted that wife admitted she had an interest in the outcome of the suit); Estate of Parson, 416 So.2d at 517 (in determining whether the Dead Man's Statute applies in a particular case, the questions to be answered are whether (1) the witness has a personal and immediate interest in the issue being litigated and (2) whether the other party to the communication is deceased). Although Ms. Blawie did not directly admit to having an interest in the estate, there is no question that she will directly benefit from her husband's status as an heir-at-law if and when it is determined that the will has been revoked. Moreover, she admitted to having expended monies on behalf of the decedent, so she does, in fact, have a personal and immediate interest in determining whether the will has been revoked. Thus, any portion of Ms. Blawie's testimony regarding oral communications between herself and the decedent is barred under the statute.
We can, however, consider Ms. Blawie's testimony that she had free access to the decedent's home both before and after the decedent's death, and her admission to having the will in her possession prior to the time the decedent allegedly tore it up. Although Ms. Blawie claims that decedent made clear her intention to revoke the will, that testimony is incompetent under the Dead Man's Statute. Earl *1269 Frederick Booth, on the other hand, prior to the second hearing, had disclaimed any interest in decedent's estate. Thus, his testimony is admissable to rebut the presumption of revocation.
Considering a copy of the will was presented to the court, and at least one disinterested witness testified that it was a correct copy, we find the requirements of section 733.207, Florida Statutes (1991) providing for the establishment of a lost or destroyed will, have been met. Booth's testimony regarding the decedent's wishes with respect to her 1985 will, coupled with the circumstances surrounding decedent's illness and last month of life, including Ms. Blawie's access to decedent's home and opportunity to destroy the will herself, as well as her pecuniary interest in doing so, constitutes competent and substantial evidence sufficient to rebut the presumption of revocation. We, therefore, conclude the probate judge erred in denying the petition to establish the lost or destroyed will.
Accordingly, the decision of the trial court denying the petition for lost or destroyed will is reversed, and the cause remanded with directions to admit the 1985 will to probate.