880 So.2d 1271 (2004)
In re ESTATE OF Louise HATTEN.
Antoinette Tartaglia, Jeanette Kidd, and Anthony Hatten, Appellants,
v.
Louis Hatten, individually, Appellee.
No. 3D03-2539.
District Court of Appeal of Florida, Third District.
September 1, 2004.
*1272 Jose Saavedra, Miami,for appellants.
Walton Lantaff Schroeder & Carson, Lawrence D. Smith, Miami, and Erich B. Neumann, Coral Gables, for appellee.
Before COPE, GODERICH, and GREEN, JJ.
COPE, J.
This is an appeal of a summary judgment in favor of the defendant in an action for interference with a testamentary expectancy. We conclude that disputed issues of material fact remain, and reverse for further proceedings.

I.
As this is an appeal from a summary judgment, the facts put forth by the plaintiffs are accepted as true for present purposes.
The decedent, Louise Hatten, died August 17, 2001. The decedent had seven brothers and sisters.
In 1996 or 1997 one of the sisters, plaintiff-appellant Antoinette Tartaglia, visited the decedent. The decedent showed plaintiff Tartaglia her will. When Ms. Tartaglia read it, she saw that the decedent had disinherited three family members. The decedent told plaintiff Tartaglia that she disinherited her brothers Louis and George, and her nephew Joseph.[1]
The will left the decedent's property to the three plaintiffs (her sister Antoinette Tartaglia, her sister Jeanette Kidd, and her brother Anthony Hatten), plus a another sister, Helen Parker, who is not a party to this litigation.
In May 2001, plaintiff-appellant Jeanette Kidd vacationed with the decedent. The decedent told plaintiff Kidd the contents of *1273 her will. The description was the same as the contents of the will plaintiff Tartaglia had read in 1996 or 1997. Plaintiff Kidd did not, however, actually see the will.
According to plaintiff-appellant Anthony Hatten, the decedent also described the will to him. Again, the decedent's description of the bequests was the same as those contained in the will plaintiff Tartaglia saw in 1996 or 1997.
On August 17, 2001three months after the conversation between decedent and plaintiff Kidd regarding the contents of the willthe decedent died. The day after the decedent's death, plaintiff Tartaglia and defendant Louis Hatten went to the decedent's home along with a neighbor, Helen Baer.
According to plaintiff Tartaglia, while she and others picked out the clothes in which the decedent would be laid to rest,
[Defendant] Louis [Hatten] was going through all [of decedent] Louises drawers and putting all kinds of papers and documents in a paper bag. He was also putting personal items on the dining room table along with a couple of card board as well as metal boxes, which, he departed the condominium with these items....
[Defendant] Louis [Hatten] never showed me any of the things in the bags or boxes. Not only was there no discussion of their contents, I was never shown what was taken out of the apartment. We never heard anything further about the Will or the contents of what Louis removed from the apartment that day. I firmly believe that Louis found the Will, read it, and discovered that he had been disinherited, and then destroyed the Will.
R. 77.
Thereafter defendant Louis Hatten filed a petition for administration and was named the personal representative of the estate. The estate was opened as an intestate estate. Under Probate Rule 5.200, the verified petition must contain:
(h) in an intestate estate, a statement that after the exercise of reasonable diligence the petitioner is unaware of any unrevoked wills or codicils, or if the petitioner is aware of any unrevoked wills or codicils, a statement why the wills or codicils are not being probated, or otherwise a statement of the facts concerning any such will or codicil....
Fla. Prob. R. 5.200(h) (emphasis added).
The plaintiffs filed an adversary action against the defendant, seeking damages for the tort of interference with a testamentary expectancy. This cause of action was recognized in Florida in DeWitt v. Duce, 408 So.2d 216 (Fla.1981). The cause of action is available where the defendant has maliciously destroyed a will, and the plaintiff is unable to reestablish the destroyed will in a probate proceeding. Id. at 219.
The plaintiffs allege that the decedent had repeatedly told each of them that she had made a will which disinherited Louis, George, and Joseph. The decedent had reconfirmed the existence of the will in May 2001 shortly before her demise in August of 2001. The plaintiffs allege that the will was in the personal papers which the defendant took away from the decedents home the day after her death. They assert that the defendant read the will and destroyed it upon finding that it left him only one dollar. The plaintiffs state that as a result of this malicious destruction, the $700,000 estate will be divided seven ways under the law of intestate succession. Under the will, the three plaintiffs plus nonparty Helen Parker would have each received one fourth.
*1274 The defendant moved for summary judgment. He argued that all of the plaintiffs evidence is barred under (a) hearsay rule and (b) the Dead Mans Statute.
The trial court granted summary judgment for the defendant. The plaintiffs have appealed.

II.
In this case the decedent was known to have made a will. When a decedent who has made a will dies, and the will cannot be found among the decedents personal papers (or other logical locations such as safety deposit box or family lawyer), a presumption arises that the decedent herself destroyed the will, intending to revoke it. See Walton v. Estate of Walton, 601 So.2d 1266, 1266-67 (Fla. 3d DCA 1992).
This presumption is rebuttable, id., and there is a factual issue in this case which precludes summary judgment for the defendant. That is so because in this case the defendant carried away the decedent's personal papers without letting anyone else examine them. He later reported that no will was found. Since the decedents will left the defendant one dollar, but under intestate succession the defendant will take approximately $100,000, there was a motive for the defendant to destroy the will. The defendant denies that he did any such thing, but for summary judgment purposes there is a factual dispute for the trier of fact. See Upson v. Carville, 369 So.2d 113 (Fla. 1st DCA 1979).

III.
Proceeding to the defendant's evidentiary arguments, we first consider the defendant's contentions regarding the hearsay rule.
The defendant maintains that the hearsay rule bars evidence of the contents of the decedent's will. That is not so.
There is a specific hearsay exemption for statements which relate "to the execution, revocation, identification, or terms of the declarants will." 90.803(3)(b), Fla. Stat. (2003). According to Professor Ehrhardt:
Section 90.803(3)(b)1 recognizes that a statement of memory or belief is admissible when it relates to the execution, revocation, identification, or terms of the declarant's will. Generally, courts recognizing an exception of the hearsay rule have provided that a decedent's statements relating to the execution or the revocation of a will are admissible regardless of whether they are made prior or subsequent to the execution or revocation. Since the declarant is dead there is a much greater necessity for the admissibility of this evidence than is generally present under section 90.803(3).
Charles W. Ehrhardt, Florida Evidence 803.3b, at 772 (2004) (emphasis added; footnote omitted).
The hearsay rule does not bar the testimony of the plaintiffs regarding (1) the fact that the decedent had executed a will and (2) the contents of the will.

IV.
The defendant next argues that even if the hearsay rule does not bar the plaintiffs' evidence, the Dead Man's Statute is a barrier the plaintiffs cannot overcome. Again, we disagree. We conclude that the Dead Mans Statute does not apply in an action for tortious interference with a testamentary expectancy.

A.
When a will has been maliciously destroyed, there are two procedures which are potentially available to rectify the situation. The first option is a petition under *1275 the Florida Probate Code to establish the contents of the destroyed will.
Section 733.207, Florida Statutes (2003), states:
733.207 Establishment and probate of lost or destroyed will.Any interested person may establish the full and precise terms of a lost or destroyed will and offer the will for probate. The specific content of the will must be proved by the testimony of two disinterested witnesses, or, if a correct copy is provided, it shall be proved by one disinterested witness.
(Emphasis added). As explained by the statute, establishment of a will can be accomplished only if there is the testimony of a disinterested witness plus a copy of the will, or if there is the testimony of two disinterested witnesses. Id. The Probate Code defines "interested person" in part as "any person who may reasonably be expected to be affected by the outcome of the particular proceeding involved." 731.201(21), Fla. Stat. (2003).
In this case the section 733.207 procedure cannot be used by the plaintiffs. That is so because the only available testimony would come from the three plaintiffs, all of whom are "interested" under the terms of the Probate Code.

B.
The alternative remedy available to the plaintiffs is an action for tortious interference with a testamentary expectancy. The Florida Supreme Court has said:
Thus when the plaintiff is unable to establish a destroyed will in a probate proceeding because there was only one witness to that will, relief by an action in tort for malicious destruction is proper. The issue of what the destroyed will contained never was decided in the probate court and hence is not res judicata for purposes of the tort action. Recovery is allowed because of the equitable maxim that no wrong shall be without a remedy.... A pattern may be developed from this line of cases which allows the later action for tortious interference only if the circumstances surrounding the tortious conduct effectively preclude adequate relief in the probate court.
... Cases which allow the action for tortious interference with a testamentary expectancy are predicated on the inadequacy of probate remedies, although this is not articulated.
DeWitt v. Duce, 408 So.2d at 219 (citations and footnotes omitted; emphasis added).
In the present case the plaintiffs seek a judgment for damages against the defendant. The plaintiffs proceed on the premise that relief is unavailable to them under the Probate Code, and that the estate will be divided seven ways under the law of intestate succession.
The plaintiffs reason that the destruction of the will has greatly diminished each plaintiffs share of the estate. They seek a damage judgment from the defendant for the amount of the loss.

C.
This brings us to the question whether the Dead Man's Statute has any application in an action for tortious interference with a testamentary expectancy. We conclude that it does not.
The Dead Man's Statute applies to a "person interested in an action ... against the personal representative, heir-at-law, assignee, legatee, devisee, or survivor of a deceased person...." 90.602(1), Fla. Stat. (2003). "To be protected, the person must be involved in the suit in a representative, and not a personal capacity." Charles W. Ehrhardt, Florida Evidence 602.1, at 435-36 (emphasis added; footnote omitted). Although the defendant is the personal *1276 representative and an heir, he is not being sued in any such capacity.
The plaintiffs in this case are not seeking to have the personal representative modify the distribution of the estate. The plaintiffs concede that they cannot establish the contents of the destroyed will in a probate proceeding under section 733.207. Thus they are not seeking a decree which would reduce the defendant's share of the estate from $100,000 (under intestate succession) to the $1 set forth in the destroyed will.
The plaintiffs instead are suing the defendant for his (alleged) action in destroying or concealing the decedent's will. They seek damages for the amount that their respective shares were reduced as a result of the defendant's act.
The Florida Supreme Court has said that the Dead Man's Statute "is only appropriate to suits against parties in their representative capacities...." McDougald v. Couey, 150 Fla. 748, 9 So.2d 187, 188 (1942); see also 2 Juan Ramirez, Jr., Florida Evidence Manual 90.602.01, at 6-17 (2d ed.2003). Since the defendant in McDougald had been sued in an individual capacity, the Dead Mans Statute did not apply. See also Mathews v. Hines, 444 F.Supp. 1201, 1206 (M.D.Fla.1978); Allstate Ins. Co. v. Doody, 193 So.2d 687, 689 (Fla. 3d DCA 1967); Klein v. Witte, 142 So.2d 789, 792 (Fla. 2d DCA 1962).
The same logic applies here. The defendant is being sued personally for damages. As in McDougald, the Dead Man's Statute does not apply in the tort action at all.
Professor Ehrhardt's discussion of the statute is particularly relevant here:
Because of the difficulties in determining when section 90.602 applies and when it is waived, and because the drafters were primarily concerned with protecting an estate against claims by creditors based on oral contracts, when faced with questions concerning whether an individual is barred by section 90.602 from testifying, courts should narrowly construe the statute so as to disqualify as little testimony as possible. Judges and juries are as capable of weighing the conflicting evidence and determining the credibility of witnesses in probate matters as they are in tort or criminal suits. All the considerations that generally are considered by fact-finders are appropriate in probate matters. Only testimony that is worthy of belief will be credited; all of the facts and circumstances will be considered in determining which party's version of the events will be believed.
Charles W. Ehrhardt, Florida Evidence 602.1, at 441 (emphasis added).[2]

V.
We reverse the summary judgment and remand the cause for further proceedings consistent herewith.
NOTES
[1] The decedent said she did this because Louis and George had borrowed money from her and had not repaid it. Her nephew Joseph had borrowed money from the decedent's sister Antoinette Tartaglia and had not repaid Antoinette.

The decedent accomplished the disinheritance by leaving only one dollar to her brother, defendant Louis Hatten, and one dollar to her brother George Hatten, a nonparty to this litigation. She left nothing to her nephew, Joseph Cucchiara, a nonparty to this litigation. Mr. Cucchiara was the son of the decedents sister Alice. Alice had predeceased the decedent.
[2] Assuming for purposes of discussion that the Dead Man's Statute were applicable here, reversal would still be required. That is so because the Dead Man's Statute only bars testimony regarding "any oral communication between the interested person and the person who is deceased ... at the time of the examination." § 90.602(1), Fla. Stat. (2003) (emphasis added). The Statute would not bar plaintiff Tartaglia's testimony about the will she read, because the will is a written document, not an oral communication. See Carpenter v. Wemyss, 638 So.2d 592 (Fla. 4th DCA 1994).