SMITH, Judge.
Plaintiff (appellant) sued the defendant (appellee) in an action on a promissory note. The defendant answered admitting the execution of the note and alleged forgiveness of the debt by gift through destruction of the note by the plaintiff’s decedent. Plaintiff moved for summary judgment, which was denied. Subsequently, at the trial of the issues, the plaintiff introduced into evidence the promissory note. The note had been torn into four pieces and then reconstructed with transparent cellophane tape. The court then held that the burden of proof was on the plaintiff to show that the note was a valid instrument by showing that the tearing thereof was unintentional. In endeavoring to meet this burden, plaintiff offered into evidence the deposition of Minnie Fohn, one of the residuary devisees under the will. The court sustained the objection to the deposition, and the plaintiff, having no further testimony, rested. Final judgment was then entered in favor of the defendant.
Plaintiff contends that all lie had to do was to introduce the note into evidence and he thereby established a prima facie case and the burden of going forward then shifted to the defendant to show that the debt had been discharged, citing authority to establish this principle, Knauer v. Levy, Fla.App.1959, 115 So.2d 776. This decision, and the numerous others to the same effect, are all predicated upon the introduction into evidence of a note not torn into four pieces as was the note in this case. Had the note not been so torn, the burden of proving each element essential to the validity of a gift would have been upon the defendant. Hunter v. Moore, Fla.App.1961, 131 So.2d 489. It is likewise elementary that when the defendant in an action on a promissory note tenders a plea of payment the burden is on him to prove his plea by a preponderance of the evidence. Click v. Dowd, 1931, 102 Fla. 336, 135 So. 840.
The Negotiable Instruments Law, Chapter 675, Florida Statutes, F.S.A., provides:
“675.28 How negotiable instruments discharged — (1) A negotiable instrument is discharged:
*791 * * * * * *
“(c) By the intentional cancellation thereof by the holder.
* sic * * * *
“675.31 Unintentional cancellation —A cancellation made unintentionally, •or under a mistake, or without the authority of the holder, is inoperative; but where an instrument, or any signature thereon, appears to have been canceled, the burden of proof lies on the party who alleges that the cancellation was made unintentionally, or under a mistake or without authority.”
This Court takes judicial knowledge of the fact that a common method of intentional cancellation of a negotiable instrument is by the tearing of the instrument into pieces. Thus, this instrument appears to have been cancelled, and Section 675.31, Florida Statutes, F.S.A., supra, placed the burden of proof on the plaintiff to show that the cancellation was made unintentionally, or under a mistake, or without authority. It has been held that mutilation of a negotiable instrument by burning was presumed intentional and the burden was on the plaintiff to show that such burning was done unintentionally, or by mistake, or without authority. Jones’ Adm’rs v. Coleman, 1917, 121 Va. 86, 92 S.E. 910. To like effect see 11 C.J.S. Bills and Notes §§ 652 and 662.
With respect to the plaintiff’s tender into •evidence of the deposition of Minnie Fohn, the objection made by the defendant and sustained by the court was that the proffered testimony was incompetent under the provisions of the “Dead Man’s Statute.” Section '90.05, Florida Statutes, F.S.A., the material parts of which are as follows:
“No person * * * shall be excluded from testifying as a witness by reason of his interest in the event of the action * * * provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a 'witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, * * * against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, * * * but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, devisee, survivor * * * shall be examined on his own behalf, or as to which the testimony of such deceased person * * * shall be given in evidence.” (Emphasis supplied)
The above statute was adopted in Florida in 1874 verbatim from the New York Statute, § 829, New York Code of Civil Procedure. There have been no amendments to the Florida act, but the New York act has been amended and is now New York Civil Practice Act, § 347. The first purpose of the act was to remove the common law disqualification for interest.
“ * * * The theory of the proviso to the statute is that where one of two persons whose mouths have been opened by its general provision to testify as to a transaction between them, has been taken away by death, the mouth of the survivor should be closed also as to such transaction, against the executor or other representative of the deceased person, or his assignee or other person claiming through him, until or unless the executor, assignee, or other person representing or claiming under such deceased person shall himself testify as to such transaction, or, having preserved the testimony of such deceased person as to it, shall use it in evidence. To the living par *792 ty to the transaction it prescribes perpetual silence as against the representative of the dead, and his assignee or others claiming under him, unless such representative or assignee, or other claiming under him, shall himself elect to testify as to such transaction, or to introduce the testimony of the deceased as to it. What the living knows or would testify is excluded, because what the dead would testify if living cannot be or is not given in evidence, or because his representative or assignee is not himself so acquainted with the facts of it as to encourage him to go upon the stand. This is the underlying principle of the exclusion. As one is not confronted by the other, the former is restrained from saying anything.
“The temptation to misrepresentation and perjury in such cases, however superior many might prove to• it, was doubtless thought by the legislature to be too great to permit the survivor to speak. The interest of those claiming under the deceased, if not the ordinary principles of fairness, was thought to demand the protection of such silence, unless and until they should themselves elect to testify as to the transaction, or to introduce the deceased’s testimony as to it. In case the executor or assignee testifies as to the transaction, — tells under oath what he may know about it,- — or in case he introduces the evidence of the deceased as to it, his doing so is deemed by the statute a sufficient reason for admitting the survivor of the parties to such transaction to testify; because in the one case such survivor would encounter what such executor or as-signee may know of the transaction, and in the other case he is confronted by the statements of the deceased as to the facts and circumstances of the same transaction which he will detail his own account of; and in both cases such executor or assignee, or other person of a like class, exercises his privilege with a full knowledge of its letting in the survivor to testify, and of even the possible consequence thereof.” Harris v. Bank of Jacksonville, 1886, 22 Fla. SOI, 1 So. 140.
The proffered testimony in the deposition of Minnie Fohn was to the effect that, in her presence, but not in the presence of any other person, the decedent removed the promissory note from her papers and said, “Well, I will never see this again,” and the decedent tore the note up. Then, the witness advised the decedent not to be foolish, that some day she might be able to collect something on it, and the decedent pasted the note back together. This was an action by the decedent’s executor for the collection of a promissory note against the defendant, and the testimony of the witness was offered on behalf of the decedent’s executor. Even though the defendant was one of the heirs at law of the decedent, he was not sued in that capacity and likewise the fact that he was a legatee was immaterial to this action. He was sued as an individual for the payment of his personal note.
Since the effect of the proffered testimony was in favor of the executor, the proffered testimony was not “against the executor, administrator, heir at law, next of kin, as-signee, legatee, devisee or survivor of such deceased person. It appears, therefore, that for lack of this essential element the testimony of the witness, Minnie Fohn, should have been received in evidence.
In an effort to expedite and terminate litigation between the parties, and in order to determine whether or not the error noted requires reversal, and in view of the fact that this court is not required to consider an alleged error separately, but it may examine the entire record to determine whether it actually had harmful effect, we have examined the deposition of Minnie Fohn. Noting that the record clearly es *793 tablishes that this witness is the only-witness who can testify with respect to the cancellation of the promissory note, we are compelled to the view that the testimony of this witness is insufficient to carry the burden of proof of the plaintiff to show that the cancellation was made unintentionally, or under a mistake, or without authority as required by § 675.31, Florida Statute, F.S.A., supra. It therefore follows that the judgment must be, and the same is affirmed.
Affirmed.
SHANNON, C. J., and McMULLEN, NEIL C., Associate Judge, concur.