ROTHENBERG, J.
Raltron Electronics Corporation (“Ral-tron”) executed a statutory general assignment for the benefit of creditors, assigning all of its assets, except those “exempt by law from levy and sale under an execution,” to Michael Phelan (“the Assignee”). See § 727.104, Fla. Stat. (2006). The As-signee filed a Petition Commencing Assignment for the Benefit of Creditors in the circuit court.[1]
The Assignee filed a motion in the circuit court seeking to sell Raltron’s assets free and clear of liens and claims. Thereafter, SS Funding LLC (“SS Funding”) filed an objection to the Assignee’s motion, alleging that it had a valid, perfected lien on Raltron’s assets pursuant to promissory notes executed by Raltron in December 2002 (“the 2002 Notes”).[2] In response to SS Funding’s objection, the Assignee filed a Supplemental Proceeding to Determine Validity, Priority and Extent of Lien of SS Funding (“Supplemental Proceeding”), asserting that in May 2004, the 2002 Notes were cancelled and replaced by a promissory note from Raltron to Global Happy Corporation (“Global Happy”) in the amount of $7.9 million (“the 2004 Note”), and that this obligation to Global Happy was not perfected by the filing of a financing statement. SS Funding filed its Answer and Affirmative Defenses and/or Motion to Dismiss, asserting, in part, that the Supplemental Proceeding fails to state a cause of action because the “loan documents evidencing said claim prevent any modification thereto, other than in writing,” and that there “is no allegation of the existence of such writing.”[3] The trial *1284 court denied SS Funding’s motion to dismiss. In addition, the parties’ motions for summary judgment were denied.
A non-jury trial was conducted on the Supplemental Proceeding, at which several witnesses testified and evidence was introduced. The primary issue for the trial court’s determination was whether SS Funding intended to discharge Raltron’s obligations under the 2002 Notes when it surrendered the 2002 Notes to Raltron. § 673.6041(l)(a), Fla. Stat. (2004).
The trial court entered a final judgment in favor of the Assignee, finding as follows. SS Funding was purchased by Global Happy in March or April 2004, and as a result, both Global Happy and SS Funding were controlled by the same individual, Stone Liu, and represented by the same attorney, Clare Lin. Thereafter, Raltron and Global Happy entered into negotiations to restructure the 2002 Notes and their business relationship. On April 18, 2004, Ral-tron and Global Happy executed a Memorandum of Understanding (“April MOU”), which was executed by Mr. Liu as a representative of Global Happy. The April MOU provides in part as follows:[4]
3.) CONVERSION OF SERIES A PREFERRED STOCK
Raltron shall redeem 8,600,000 shares of Series A Convertible Preferred held by Global to a Portfolio Interest Exempt-Loan [sic] of one million two hundred and forty five thousand U.S. dollars ($1,245,000). The Portfolio Interest-Exempt [sic] Loan shall be subordinate to the loan of six million five hundred and fifty five thousand U.S. dollars ($6,555,-000) as adjusted and described in the (“AMENDMENT TO SECOND AMENDED AND RESTATED LOAN AND SECURITY AGREEMENT”)....
4.) REPAYMENT OF LOAN TO GLOBAL CORPORATION
At the date of the Closing[,] seven million nine hundred thousand dollars U.S. ($7,900,000) shall be due and owing to Global Corporation.
This amount is comprised of $6,655,000 as adjusted and originating from the Amendment to the Second Amended and Restated Loan and Security Agreement and the new subordinated debt loan of $1,245,000 created by the redemption of the Series A Preferred Stock of 8,600,-000. The total loan amount of $7,900,000 shall be repaid by Raltron, including ten per cent [sic] (10%) interest calculated on a monthly basis....
The April MOU was partially performed because the 8,600,000 shares were redeemed, and Raltron executed the 2004 Note in the amount of $7.9 million, which incorporated the balance of the 2002 Notes and an additional $1,245 million loan by Global Happy to Raltron. Unlike the 2002 Notes, the 2004 Note was not perfected in Florida.
After the 2004 Note was executed, Richard Knecht, Raltron’s Chief Executive Officer, sent an e-mail to Ms. Lin, requesting that the 2002 Notes be sent to Stephen Blass, Raltron’s attorney, so that the 2002 Notes could be cancelled. Thereafter, the 2002 Notes were given to Knecht, and he *1285 later delivered them to Blass. There was no notation made on the 2002 Notes. Pri- or to the instant litigation, SS Funding did not seek the return of the 2002 Notes. Moreover, Raltron made no further payments under the 2002 Notes, and commenced making payments under the 2004 Note.[5]
In July 2004, a second Memorandum of Understanding (“July MOU”) was executed by Liu on behalf of Global Happy. The July MOU referenced the 2004 Note in the amount of $7.9 million, and stated that the interest payments were to be made to Global Happy’s bank account.
The trial court’s order further provides: “It is undisputed that the [2002 Notes were] delivered to Raltron’s attorney and thus, as a matter of law the [notes were] canceled unless [SS Funding] proves that the cancellation was made unintentionally, under mistake, or without authority. Klein v. Witte, 142 So.2d 789 (Fla. 2d DCA 1962).” The trial court concluded that SS Funding delivered the 2002 Notes “with the intent to cancel,” and that SS Funding failed to demonstrate that the “cancellation of the [2002 Notes] was made unintentionally, under mistake, or without authority,” and therefore SS Funding does not have valid lien on any of Raltron’s assets. SS Funding’s appeal followed.
SS Funding acknowledges that pursuant to section 673.6041(l)(a), “[a] person enti-tied to enforce an instrument ... may discharge the obligation of a party to pay the instrument,” by voluntarily surrendering the instrument to the party obligated to pay under the instrument.[6] SS Funding also concedes that it is undisputed that the 2002 Notes were in Raltron’s possession, and therefore, there is a rebuttable presumption that SS Funding surrendered the 2002 Notes with the intent to discharge Raltron of its obligations under the notes. SS Funding, however, challenges the trial court’s findings of fact and its conclusion that SS Funding failed to rebut the presumption.
In support of its contention, SS Funding argues that it presented evidence demonstrating that: 1) the 2002 Notes were delivered to Raltron for the purpose of placing the 2002 Notes in escrow pending the closing of the April MOU, not with the intent to cancel the notes; and 2) the April MOU provides that the $1,245 million portfolio loan shall be subordinate to the $19 million loan, thereby indicating that SS Funding did not intend to cancel the 2002 Notes.
In contrast, Raltron presented evidence demonstrating that, as contemplated by paragraph three of the April MOU, Ral-tron redeemed 8,600,000 shares of stock in exchange for a $1,245 million debt obligation, and that the 2004 Note in the amount of $7.9 million incorporates the *1286 balance of the 2002 Notes and the obligation incurred by Raltron when it redeemed the 8,600,000 shares. In addition, Raltron presented the following facts which support the trial court’s conclusion that SS Funding intended to discharge Raltron of its obligations under the 2002 Notes: 1) following the redemption of the 8,600,000 shares and the execution of the 2004 Note, SS Funding’s attorney delivered the 2002 Notes to Kneeht, Raltron’s Chief Executive Officer; 2) there were no notations on the 2002 Notes or any correspondence indicating that the notes were to be held in escrow by Raltron; 3) the 2002 Notes were returned to Kneeht after he sent an e-mail to SS Funding’s attorney, requesting that the 2002 Notes be sent to Stephen Blass, Raltron’s attorney, so that the 2002 Notes could be cancelled; 4) following the execution of the 2004 Note, Raltron made no further payments under the 2002 Notes and it made numerous payments under the 2004 Note; 5) prior to the instant litigation, SS Funding did not request that Raltron return the 2002 Notes; and 6) the July MOU referenced the 2004 Note in the amount of $7.9 million, and stated that the interest payments were to be made to Global Happy’s bank account.
In conclusion, as the trial court’s findings of fact are supported by competent substantial evidence, and these facts support the trial court’s conclusion that SS Funding voluntarily surrendered the 2002 Notes to Raltron with the intent to discharge Raltron of its obligations under the notes, we affirm the final judgment under review, which concludes that SS Funding does not have a current valid lien on any of Raltron’s assets.
Affirmed.

. Pursuant to section 679.3091(12), Florida Statutes (2006), the Assignee became a perfected secured creditor.

. One note was for more than $19 million and the second note was for approximately $226,000.

. The motion to dismiss does not refer to a specific loan document or a specific provision in a loan document. SS Funding's initial brief, however, refers to section 12.11 of the Second Amended and Restated Loan and Security Agreement, dated December 19, 2002, which provides as follows:
Section 12.11 Amendments. Any term, covenant, agreement or condition of this Agreement or any other Loan Documents may be amended or waived and any departure therefrom may be consented to if, but only if, such amendment, waiver or consent *1284 is in writing signed by the Lender and, in the case of an amendment, by the Obligors. Unless otherwise specified in such waiver or consent, a waiver or consent given hereunder shall be effective only in the specific instance and for the specific purposes for which given.
Section 12.11 applies to amendments to the loan documents, not the cancellation of the promissory note.

. There is an inconsistency in the April MOU. Paragraph three refers to a loan in the amount of $6,555,000, whereas paragraph 4 refers to a $6,655,000 loan.

. The original 2004 Note could not be located. At trial, however, the Assignee introduced an e-mail from Blass’ secretary to Knecht, indicating that the original 2004 Note was sent to Lin, via DHL, referencing a specific airway bill. The Assignee also introduced a copy of the referenced airway bill, which indicates that documents were sent from Blass’ office in Miami, Florida, to Lin’s office in Taiwan.

. Section 673.6041 provides in part as follows:
(1) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument:
(a) By an intentional voluntary act, such as:
1. Surrender of the instrument to the party;
2. Destruction, mutilation, or cancellation of the instrument;
3. Cancellation or striking out of the party's signature; or
4. Addition of words to the instrument indicating discharge[.]